# EXHIBIT A

# PART 6

# EXHIBIT 8

MILLER NASH LLP
Bernie Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: 562.435.8002
Facsimile: 562.435.7967

Attorneys for Plaintiff
Conterra Agricultural Capital, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of Kern
By: Alexandra Valles-Guerrero
Deputy Clerk
12/4/25 11:19 AM

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF KERN

CONTERRA AGRICULTURAL CAPITAL, LLC, an Iowa Limited Liability Company,

Plaintiff,

v.

HRONIS CAPITAL ASSETS, LP, a California Limited Partnership; HRONIS CAPITAL MANAGEMENT, LLC, a California Limited Liability Company; HRONIS CITRUS, LLC, a California Limited Liability Company; HRONIS FARMING, LP, a California Limited Partnership; HRONIS FRUIT COMPANY LLC, a California Limited Liability Company; HRONIS, INC., a California corporation; HRONIS LAND COMPANY, a California general partnership; HRONIS RANCH, LLC, a California Limited Liability Company; HRONIS RESOURCE MANAGEMENT, LLC, a California Limited Liability Company; THE HRONIS FAMILY LIMITED PARTNERSHIP, a California Limited Partnership; PETER JOHN HRONIS, an individual; KOSTA JAMES HRONIS, an individual; DEMETRIUS ALBERT HRONIS, an individual; KOSTA HRONIS In His Capacity As Trustee Of THE KOSTA HRONIS LIVING TRUST DATED FEBRUARY 12, 2014; PETER JOHN HRONIS, in his capacity as Trustee of THE PETER JOHN HRONIS LIVING TRUST DATED FEBRUARY 28, 2006; KOSTA HRONIS AND PETER J. HRONIS, in their capacity as Trustees of the SOPHIA HRONIS

Case No. 25CUB00833

**COMPLAINT FOR:**

**(1) APPOINTMENT OF A RECEIVER;**

**(2) JUDICIAL FORECLOSURE OF THE REAL PROPERTY COLLATERAL;**

**(3) BREACH OF LOAN DOCUMENTS / DEFICIENCY JUDGMENT**

**(4) JUDICIAL FORECLOSURE OF THE PASADENA PROPERTY;**

**(5) JUDICIAL FORECLOSURE OF THE DANA POINT PROPERTY;**

**(6) BREACH OF GUARANTEES / DEFICIENCY JUDGMENT; AND**

**(7) REPLEVIN AND FORECLOSURE ON PERSONAL PROPERTY COLLATERAL AND ADDITIONAL PERSONAL PROPERTY COLLATERAL**

IRREVOCABLE TRUST ONE DATED DECEMBER 27, 2012; HRONIS RACING, LLC, a California Limited Liability Company; SHAMROCK TRANSPORT, LLC, a California Limited Liability Company; STEPHANIE HRONIS, an individual; LAURIE HRONIS, an individual; and DOES 1-10, inclusive.

Defendants.

Conterra Agricultural Capital, LLC, an Iowa Limited Liability Company ("Conterra") alleges as follows:

**PARTIES**

1. Plaintiff Conterra is an Iowa limited liability company authorized to do business in the State of California. Conterra's principal place of business is located in West Des Moines, IA.

2. Defendant Hronis Capital Assets, LP, is a California limited partnership organized under the laws of California.

3. Defendant Hronis Capital Management, LLC, is a California limited liability company with a principal place of business in Kern County, California.

4. Defendant Hronis Citrus, LLC, is a California limited liability company with a principal place of business in Kern County, California.

5. Defendant Hronis Farming, LP, is a California limited partnership organized under the laws of California with a principal place of business in Kern County, California.

6. Defendant Hronis Fruit Company LLC, is a California limited liability company with a principal place of business in Kern County, California.

7. Defendant Hronis, Inc., is a corporation organized under the laws of California with a principal place of business in Kern County, California.

8. Defendant Hronis Land Company, a California general partnership, whose principal place of business is in Kern County.

9. Defendant Hronis Ranch, LLC, is a California limited liability company with a principal place of business in Kern County, California.

10. Hronis Resource Management, LLC, is a California limited liability company with a principal place of business in Kern County, California.

11. The Hronis Family Limited Partnership is a limited partnership organized under the laws of California with a principal place of business in Kern County, California.

12. Collectively, Hronis Capital Assets, LP, Hronis Capital Management, LLC, Hronis Citrus, LLC, Hronis Farming, LP, Hronis Fruit Company LLC, Hronis, Inc., Hronis Land Company, Hronis Ranch, LLC, Hronis Resource Management, LLC, and Hronis Family Limited Partnership are the "Borrowers".

13. Defendant Peter John Hronis is an individual residing in and doing business in Kern County, California.

14. Defendant Kosta James Hronis is an individual residing in and doing business in Kern County, California.

15. Defendant Demetrius Albert Hronis is an individual residing in and doing business in Kern County, California.

16. Defendant The Kosta Hronis Living Trust Dated February 12, 2014 is a trust organized under the laws of California. Defendant Kosta Hronis is trustee of this trust and is also named in this capacity.

17. Defendant The Peter John Hronis Living Trust Dated February 28, 2006 is a trust organized under the laws of California. Defendant Peter John Hronis is trustee of this trust and is additionally named in this capacity.

18. Defendants The Sophia Hronis Irrevocable Trust One Dated December 27, 2012 is a trust organized under the laws of California. Defendant Peter John Hronis and Kosta Hronis are trustees of this trust and are additionally named in this capacity.

19. Collectively, defendants Peter John Hronis, Kosta James Hronis, Demetrius Albert Hronis, The Kosta Hronis Living Trust Dated February 12, 2014, The Peter John Hronis Living Trust Dated February 28, 2006, and the Sophia Hronis Irrevocable Trust One Dated December 27, 2012 are the "Guarantors".

20. Defendant Hronis Racing, LLC, a California limited liability company with a

principal place of business in Kern County, California.

21. Defendant Shamrock Transport, LLC, a California limited liability company with a principal place of business in Kern County, California.

22. Collectively, Hronis Racing, LLC and Shamrock Transport, LLC are the "Additional Parties".

23. Defendant Stephanie Hronis is an individual who, on information and belief, resides in Kern County, California.

24. Defendant Laurie Hronis is an individual who, on information and belief, resides in Kern County, California.

25. Conterra is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Conterra will amend this Complaint to allege their true names and capacities when ascertained. Conterra is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that Conterra's damages as alleged herein were proximately caused by such defendants. Each reference in this Complaint to "Defendants" includes all named defendants and those sued under fictitious names.

## JUDICIAL REFERENCE PROVISION

26. The agreements that are the subject of this action are governed by and subject to terms therein whereby the disputes between Conterra and each or all of the Defendants are to be resolved by judicial reference in accordance with the provisions of Section 638 *et seq.* of the Code of Civil Procedure. Conterra reserves all rights to seek exigent or emergency relief from the Court in the event such relief is necessary before the appointment of a referee.

## GENERAL ALLEGATIONS

### The Loan

27. Borrowers collectively operate, and partially or entirely own, a farm located in Delano, California ("Hronis Farms") which is in the business of growing agricultural crops, including but not limited to, table grapes.

28. In 2024, Conterra agreed to finance provide Borrowers' operations, and provide

other funds, through a line of credit with a maximum draw amount of $55 million. This agreement was made through a careful and diligent review by Conterra of Borrower's financial condition, based on financial statements and other information provided to Conterra by Borrowers are part of underwriting.

29. On or about October 29, 2024, Conterra made a revolving line of credit loan to the Borrowers in the amount of $55,000,000 (the "Loan"). The Loan is evidenced by that certain Loan and Security Agreement (the "Loan Agreement") attached as Exhibit A to this Complaint.

30. To provide for repayment, the Borrowers signed a Promissory Note dated October 29, 2024 (the "Note") in favor of Conterra in the amount of $55,000,000. A copy of the Note is attached as Exhibit B to this Complaint.

31. Borrowers agreed to repay the Note by paying all accrued interest monthly commencing on the first day of November, 2024, and continuing on the first day each month thereafter through and until October 29, 2027, at which the entire unpaid balance, including all principal, accrued interest, and other advances, and charges would be due and payable in full.

32. In connection with the Note, the Guarantors each signed a continuing guaranty agreement (the "Guarantees") in which they agreed to unconditionally guarantee repayment of the all obligations owed by Borrowers to Conterra. A copy of the Guarantees are attached as Exhibits C – H to this Complaint.

33. In order to secure repayment of the Note, the Loan Agreement grants Conterra certain security interests, which are collectively referred to as the "Farm Collateral".

(a) Section 5.1 of the Loan Agreement grants Conterra a security interest in substantially all personal property of Borrowers, as specifically described in section 5.1 of the Loan Agreement (along with the personal property described in the following subparagraph, the "Personal Property Collateral"). A UCC-1 Financing Statement providing notice of this security interest was recorded with the California Secretary of State on October 29, 2024 as filing number U240083964841.

(b) Hronis Ranch, LLC, The Hronis Family Limited Partnership, Hronis Land

Company, Hronis Citrus, LLC, Hronis Capital Assets, LP, Peter Hronis, and Kosta Hronis (collectively, the "Trustors") executed, acknowledged, and delivered to Conterra, a Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing (the "Deed of Trust") dated October 29, 2024, securing to Conterra repayment of their obligations to Conterra through a power of sale on certain real property located in Tulare and Kern County (the "Real Property Collateral"), along with security interests in certain fixtures and personal property located on the Real Property Collateral. The Deed of Trust was recorded with the Tulare County Recorder on November 5, 2024 as Document No. 2024-0056030. The Deed of Trust was recorded with the Kern County Recorder on November 7, 2024 as Document No. 224138621. Copies of the recorded Deed of Trust are attached as Exhibit I and Exhibit J to this Complaint.

34. To provide further security, Section 5.6 of the Loan Agreement requires that the account debtors of Borrowers deposit all payments into U.S. Bank National Association Bank Account, last four #1093 (the "U.S. Bank Account"), which is subject to a Deposit Account Control Agreement (the "DACA").

35. To provide further security, Section 5.14 of the Loan Agreement requires that Borrowers deliver the proceeds of any sales of Farm Products or Inventory to Conterra to be applied to the Balance of the Loan.

**Borrowers Misrepresentations Regarding Their Financial Position**

36. Shortly after giving the loan, Conterra learned that Borrowers' representations regarding their financial condition that was provided during underwriting was materially incorrect.

37. As part of underwriting, Borrowers provided a Position Report dated October 15, 2024 (the "October 15 Position Report") to Conterra that set forth Borrowers assets and liabilities in detail.

38. On December 3, 2024, after Borrowers had substantially drawn down on the Loan,

Borrowers provided to Conterra a revised Position Report dated December 1, 2024 (the "December 1 Position Report"). This report showed a $20.1 million dollar decrease in assets after liabilities.

39. After investigation, Conterra learned that $8.3 million of the account receivables reported in the October 15 Position Report had in fact been paid to Borrowers. Borrowers' explanation was that the reporting in the October 15 Position Report was due to an accounting error where the payments were not yet applied to the account receivables.

40. The October 15 Position Report was further inflated by an overstatement of $14.22 million for the value of crops on the vine or still growing. This reduction was due to an overestimation of both the value of the crops and the actual harvest.

41. The October 15 Position Report was further inflated by an overstatement of $3.6 million in unsold inventory, where it estimated market price was ultimately inflated.

42. The December 1 Position report also showed other reductions in assets from the October 15 Position report.

43. The December 1 Position report also disclosed that liability in the October 15 Position were overstated by $8.8 million as certain payables to intercompany and related parties should not have been reported.

44. This overestimation of assets and liabilities was not a fair representation of Borrowers' financial position, but due to negligence, recklessness, or willful misrepresentation.

45. In overestimating the assets and liabilities of Borrowers in the October 15 Position Report, Borrowers did not follow generally accepted accounting principles.

46. Conterra relied on the financial reporting of Borrowers in agreeing to enter into the Loan.

**The April Letter Agreement**

47. The Borrowers immediately defaulted on their obligations to Conterra under the Loan Documents. Borrowers' actual harvest produced far less return than the projections provided to Conterra. This failure to adequately manage Hronis Farms and to properly represent its financial condition resulted in Borrowers' default under numerous provisions of the Loan

Agreement. Further, Borrowers needed additional capital beyond the $55 million in available advances provided for under the Loan Agreement and Note.

48. Conterra, in order to keep Hronis Farms operating so that it could complete the 2025 harvest, agreed to accommodate Borrowers by increasing the available funds by $6 million, in exchange for certain concessions and additional collateral.

49. On or about April 9, 2025, Conterra, the Borrowers, and the Guarantors entered into a letter agreement (the "April Letter Agreement"). A copy of the April Letter Agreement is attached as Exhibit K to this Complaint.

50. Pursuant to the April Letter Agreement, Conterra agreed to a one-time additional draw of funds in the amount of $6,000,000 under the Note and Loan Agreement (the "April Advance").

51. In consideration for the April Advance, the Borrowers acknowledged certain events of default under the Loan Agreement and Note and that Borrowers were in default under the Loan Agreement. The Borrowers further agreed that the April Letter Agreement did not constitute a cure or forbearance of these defaults.

52. In consideration for the April Advance, the Defendants agreed to grant Conterra a security interest in the following collateral (collectively, the "Additional Collateral"):

(a) A second lien on Cessna CJ3 owned by Additional Party Shamrock Transport, LLC;

(b) A second lien on real property located at 100 S Orange Grove Blvd #201, Pasadena, CA 91105 (the "Pasadena Property"), with title currently vested in Kosta Hronis and Stephanie Hronis;

(c) A second lien on real property located at 35511 Camino Capistrano, Dana Point, CA 92624 (the "Dana Point Property"), with title currently vested in Peter Hronis and Laurie Hronis;

(d) A lien on all horses owned by Hronis Racing, LLC or in which Additional Party Hronis Racing, LLC (or any affiliate of Additional Party Hronis Racing, LLC, Borrowers, or Guarantors) has an ownership or partnership interest

therein; and

53. A pledge of the membership interests of Additional Party Hronis Racing, LLC.

54. Pursuant to the April Letter Agreement, Defendants agreed to cooperate and provide all additional documentation to Conterra to obtain and perfect a security interest in the Additional Collateral no later than April 21, 2025.

55. Defendants failed to honor their obligation to provide the additional collateral within this deadline. While Conterra has taken steps to perfect the security interests when possible, Defendants failure to honor their obligations have put Conterra's security interests at risk or leaves them entirely unperfected.

**The June Letter Agreement**

56. Despite receiving the April Advance, Borrowers' financial situation continued to spiral. Borrowers represented that they could not complete the 2025 harvest unless Conterra increased the draw amount to $85,000,000.

57. Conterra was left with little choice but to agree to this request, as if the harvest was not completed, Borrowers would have no way to repay the Loan. However, in order to protect itself from the further mismanagement of Borrowers, Conterra demanded strict conditions from all Defendants.

58. On or about June 27, 2025, Conterra, the Borrowers, and the Guarantors entered into a letter agreement (the "June Letter Agreement"). A copy of the June Letter Agreement is attached as Exhibit L to this Complaint.

59. Pursuant to the June Letter Agreement, the Borrowers acknowledged and agreed that the obligations under the October Letter Agreement and April Letter Agreement remain in full force and effect, and that all defaults remain uncured and without forbearance.

60. However, due to Borrowers' admitted misrepresentations made in origination of the Loan, their admitted defaults under the Note and Loan Agreement, and the continuing mismanagement of Hronis Farms, Conterra agreed to the increase only under strict conditions.

61. Pursuant to the June Letter Agreement, Conterra required that the Borrowers agree to "a mutually agreed upon budget and draw procedures and schedule pursuant to a mutually

agreed budget attached as Exhibit 1" to the June Letter Agreement (the "Budget").

62. Pursuant to the June Letter Agreement, the Borrowers were obligated to hire a Chief Restructuring Officer ("CRO"), to ensure that the Borrowers comply with the conditions of the June Letter Agreement. The CRO is to remain in place until the Loan is paid in full.

63. Pursuant to the June Letter Agreement, the terms of the engagement between Borrowers and the CRO was required to include certain terms, including:

(a) The CRO was to have final authority over all bookkeeping, accounting, and financing reporting;

(b) The CRO was to approve all transactions outside the ordinary course of business;

(c) The CRO must approve all disbursements, and may only approve payments in compliance with the Budget;

(d) The CRO must ensure that Borrowers comply with their obligation under the Loan Agreement to ensure that all payments by Borrowers' account debtors are made to the U.S. Bank Account.

(e) The CRO must approve all transfers and payments out of the U.S. Bank Account;

(f) Borrowers and the CRO were to jointly provide a joint certification on the 20th day of every month "that Borrowers have available funds to meet the requirements of the Budget for the following month" (the "Solvency Certification"). The Solvency Certification required the CRO to "determine[] with reasonable certainty that such funds will be available for the use of Borrowers to make all payments required under the Budget"; and

(g) If Borrowers and the CRO are unable to make Solvency Certification, the CRO is required to "prepare a liquidation plan for Borrowers in which they will timely sell all assets of Borrowers."

64. Borrowers further agreed in the June Letter Agreement that, if the Loan was not paid in full by February 28, 2026, to liquidate for the benefit of creditors.

65. Concurrently with execution of the June Letter Agreement, Conterra and the Borrowers mutually agreed upon designating Paladin Management Group, LLC as the CRO.

66. Borrowers and CRO then entered into an agreement which obligated CRO to perform under the conditions of the June Letter Agreement assigned to it. A copy of this agreement, with amendments, is attached as Exhibit M to this Complaint.

**The Defaults**

67. The Borrowers, Guarantors, and Additional Parties have defaulted on their obligations under the Loan Agreement, the Note, the Deed of Trust, the Guarantees, the April Letter Agreement, the June Letter Agreement, and other documents executed in connection with or related to the Note, and all modifications thereto (the "Loan Documents") as follows.

The Defaults Relating to Solvency

68. Pursuant to Section 1.1 of the Loan Agreement, a default occurs under the Loan Documents if "any Borrower or Guarantor fails or neglects to perform, keep or observe any of the covenants, conditions, representations, promises or agreements contained in this Agreement including but not limited to Section 3, Section 4, Section 5, Section 6, Section 7, Section 8, Section 9, or Section 10 of this Agreement…"

69. Pursuant to Section 6.2 of the Loan Agreement, the Borrowers represented and warranted that "the financial statements delivered by Borrower to the Lender present fairly the financial condition of Borrower and have been prepared in accordance with generally accepted accounting principles consistently applied." Borrowers further represented that "there has been no materially adverse change in the condition or operation of Borrower, nor has Borrower mortgaged, pledged or granted a security interest in or encumbered any of Borrower's assets or properties since such date."

70. Pursuant to Section 7.1 of the Loan Agreement, Borrowers agreed to continue to maintain books and records "accordance with generally accepted accounting principles consistently applied."

71. Borrowers breached these conditions by presenting financial statements to Conterra which materially overstated the financial condition of Borrowers.

72. Pursuant to Section 6.9 of the Loan Agreement, the Borrowers represented and warranted that Borrowers are solvent and able to pay Borrowers' debts as such debts matured.

73. Pursuant to Section 1.1 of the Loan Agreement, a default occurs if "Lender in good faith deems itself insecure or that the prospect for repayment of the Liabilities or Borrower's obligations under the Financing Agreements is impaired."

74. Borrowers are in default under these provisions as they are unable to pay their debts as they come due and require further advances from Conterra, beyond what was agreed in the Note and Loan Agreement.

75. Pursuant to Section 7.5 of the Loan Agreement, the Borrowers agreed to provide Conterra with written notice of any material adverse change in the financial condition of the Borrowers and occurrence of any Event of Default.

76. Borrowers breached this provision by failing to provide Conterra written notice of the material adverse change in their financial position.

77. Pursuant to that certain executed April Letter Agreement, the Defendants acknowledged and agreed that under that these defaults under the Loan Agreement occurred and continue to occur.

<u>Breach of the April Letter Agreement</u>

78. Pursuant to the April Letter Agreement, the Defendants agreed to grant Conterra a security interest in the Additional Collateral.

79. Pursuant to the April Letter Agreement, the Borrowers agreed to provide additional documentation to Conterra to perfect Conterra's security interest in the Additional Collateral.

80. Borrowers have failed to provide Conterra the additional documentation needed to perfect its security interest in the Additional Collateral.

81. Borrowers' failure to provide Conterra with the additional documentation constitutes a breach of the April Letter Agreement.

82. Pursuant to the April Letter Agreement, any breach of the April Letter Agreement constitutes a default under the Loan Agreement.

Breach of the June Letter Agreement

83. Pursuant to the June Letter Agreement, Defendants agreed, in exchange for a limited waiver for additional draws, to follow the "mutually agreed upon budget and draw procedures and schedule set forth in the Budget."

84. Conterra has made all advances it agreed to provide under the Budget, with the entire additional advance agreed to under the June Letter Agreement having been delivered to Borrowers.

85. Borrowers have materially breached their obligation to make payments to Conterra under the Budget.

86. Under the Budget, Borrowers were obligated to make payments of principal and interest to Conterra starting on July 6, 2025 and with regularly scheduled payments as set forth in the Budget.

87. Borrowers failed to make the scheduled payments under the Budget.

88. Under the Budget, Borrowers were to, by November 2, 2025, tender cumulative principal payments to Conterra of $18,889,000 and interest payments of $2,849,000. Borrowers have material defaulted on this obligation, having paid only $5,226,914 to Conterra since the June Letter Agreement.

89. As a condition of entering into the June Letter Agreement, Borrowers agreed to arrange for a shareholder loan from Peter Hronis, to be drawn down as set forth in the Budget (the "Shareholder Loan"). Borrowers represented that the funds to pay the shareholder loan were readily available from a loan from a family member and could be delivered pursuant to the Budget.

90. Under the Budget, Borrowers were to receive $18,997,000 by March 1, 2026 in proceeds from the Shareholder Loan, with $7,115,000 of these proceeds to be advanced by September 21, 2025.

91. The Shareholder Loan has not been drawn down as pursuant to the Budget, further depriving Borrowers of capital to fund operations and to pay Conterra.

92. Despite Borrowers' material and substantial default under the Budget, Borrowers

and the CRO have timely provided the Solvency Certification called for under the June Letter Agreement for each month. Copies of these Solvency Certifications are attached as Exhibit N to this Complaint.

93. Borrowers have failed to make the monthly payments required under the Budget, despite the monthly delivery of the Solvency Certificate, leads to one of two possible conclusions. Either Borrowers have the funds to pay Conterra the sums owed under the Budget but deliberately refuse to do so, or the Borrowers and CRO are willfully making false representations in the Solvency Certification to avoid the obligation to liquidate. In either event, Borrowers actions constitute a breach of the Loan Documents.

94. Pursuant to the June Letter Agreement, any breach of the June Letter Agreement constitutes a default under the Loan Agreement.

Excessive Payments to Insiders

95. Pursuant to Section 8.14 of the Loan Agreement, payments to certain insiders are limited to no more than $1.5 million per fiscal year.

96. Based on the financial information provided by the CRO, it appears that Peter J. Hronis, Kosta Hronis, Demetrius Hronis, and Peter N. Hronis have collectively received salaries of $1,630,647.72 for the current fiscal year, which is not yet complete.

97. This constitutes a breach of the Loan Agreement.

Failure to Disburse Funds to the Control Account for the Benefit of Conterra

98. Pursuant to Section 5.14 and 5.17 of the Loan Agreement, Borrowers agreed to deposit all proceeds of any collateral, including Farm Products, into the U.S. Bank Account to be applied to the Loan.

99. On information and belief, the Borrowers have failed to abide by this obligation.

Continued Insolvency

100. Conterra, through its regularly scheduled meetings with the CRO, is informed that Borrowers' financial insolvency continues to worsen. Due to continued mismanagement of Hronis Farms, the expected proceeds of the crop may be $20 million less than projected in the Budget.

101. Borrowers are hopelessly insolvent without any prospect of satisfying the Loan by the February 28, 2026 deadline set forth in the June Letter Agreement.

**Remedies Upon Defaults**

102. The Loan Documents provide numerous remedies upon the default of the Borrowers and Guarantors, including the following.

103. Under the Loan Agreement, Section 9.1 provides "[u]pon an Event of Default, any or all of the Liabilities may, at the option of the Lender, and without demand or notice of any kind, be declared, and thereupon shall become, immediately due and payable in full, and the Lender shall cease to be committed to make Line of Credit Advances under Agreement."

104. Under the Loan Agreement, section 9.6 provides that upon an Event of Default, Borrowers waive all rights to notice and hearing of any kind prior to Conterra exercising its rights as to the Collateral.

105. Under the Loan Agreement, section 10.3 provides that any amounts advanced by Conterra plus interest at the default rate provided for in the Loan Agreement shall constitute additional liabilities owed by the Borrowers.

106. Under the Deed of Trust, section 2 provides that any future advances made and any amounts advanced and expenses incurred by Conterra under the Loan Agreement are secured under the Deed of Trust.

107. Under section 9.2 of the Loan Agreement and Section 20 of the Deed of Trust each provides that Conterra is entitled to the appointment of a receiver upon a default by Borrowers.

108. Under the Deed of Trust, Section 30(e) provides Conterra with the power to sell the Real Property Collateral if the outstanding amounts under the Loan are not paid.

109. Under the Loan Agreement and Deed of Trust, Conterra is entitled to its attorneys' fees and costs in enforcing the Loan Documents upon a default.

110. Conterra has fully performed on all contractual obligations owed to Borrowers.

111. Performance by the Borrowers is not excused.

112. Conterra has, through the April and June Letter Agreement, and demand letters sent on August 19, 2025 and January 23, 2025, provided notice to Defendants of these breaches.

113. As of November 24, 2025, the total outstanding balance on the Note was $83,020,356.27, consisting of principal in the amount of $82,035,925.17 and interest in the amount of $984,463.10. Daily interest of $41,017.96 continues to accrue, subject to monthly interest rate adjustments.

114. Because Borrowers failed to pay the outstanding balance, Conterra is entitled to apply the default interest rate to the amounts owed under the Note.

**FIRST CAUSE OF ACTION**

**(Appointment of a Receiver)**

**As to Borrowers, Guarantors, and Additional Parties**

115. Conterra incorporates by reference all prior paragraphs in this Complaint.

116. Due to the defaults by Defendants, Conterra seeks appointment of a receiver for all purposes over Borrowers and the Farm Collateral, including, without limitation, to allow the Receiver to sell the Farm Collateral and other assets of Borrowers, manage the affairs of Borrowers until liquidated, bring claims against insiders, and attend to all other tasks required by the receivership.

117. A receiver is necessary because (i) the Farm Collateral is in danger of being lost, removed, or materially injured as Defendants are not maintaining the collateral, lack funds to pay taxes, and due to mismanagement have cause the destruction of crop collateral (ii) the Defendants are not able to pay the necessary suppliers and vendors to maintain the crops on the Farm Collateral; (iii) Defendants are insolvent or in imminent danger of insolvency; (iv) Defendants are in default and have consented to appointment of a receiver for the Farm Collateral upon default.

**SECOND CAUSE OF ACTION**

**(Judicial Foreclosure of the Real Property Collateral)**

**As to the Trustors**

118. Conterra incorporates by reference all prior paragraphs in this Complaint.

119. Conterra, by virtue of the Deed of Trust, is entitled to a judgment and decree of foreclosure on the Real Property Collateral, including a finding that the interests of Conterra in the Real Property Collateral are superior to the interests of Borrowers, Guarantors, the Additional

Parties, and Doe Defendants 1-5.

120. The Real Property Collateral has the legal description set forth in the Deed of Trust.

121. Upon sale of the Real Property Collateral, Conterra seeks, as provided for in the Loan Documents and Code of Civil Procedure 726, a deficiency judgment, should any such deficiency exist.

122. Conterra is entitled to its attorneys' fees and costs in foreclosing on the Real Property Collateral and seeking a deficiency judgment.

**THIRD CAUSE OF ACTION**

**(Breach of Loan Documents / Deficiency Judgment)**

**As to the Borrowers**

123. Conterra incorporates by reference all prior paragraphs in this Complaint.

124. Conterra has fully performed all obligations owed under the Loan Documents.

125. Borrowers have defaulted on their obligations owed under the Loan Documents.

126. Borrowers' performance under the Loan Documents is not excused.

127. Due to the default, Conterra has accelerated all sums owed under the Note.

128. As a result of the Borrowers' defaults, Conterra has been damaged in an amount to be proven at trial, but in no event less than $83,020,356.27, with default interest and charges accruing. Upon the judicial sale of the Real Property Collateral, Conterra seeks entry of a deficiency judgment against Borrowers for the remaining balance of the default, as provided by Code of Civil Procedure 726.

**FOURTH CAUSE OF ACTION**

**(Judicial Foreclosure of the Pasadena Property)**

**As to Kosta Hronis and Stephanie Hronis**

129. Conterra incorporates by reference all prior paragraphs in this Complaint.

130. Conterra, by virtue of April Letter Agreement and the other Loan Documents, is entitled to a judgment and decree of foreclosure on Pasadena Property, the legal description of which is attached to this Complaint as Exhibit O, including a finding that the interests of Conterra

in the Pasadena Property are superior to the interests of Borrowers, Guarantors, the Additional Parties, and Doe Defendants 6-10.

131. Upon sale of the Pasadena Property, Conterra seeks, as provided for by Code of Civil Procedure 726, a deficiency judgment, should any such deficiency exist.

132. Conterra is entitled to its attorneys' fees and costs in foreclosing on the Pasadena Property and seeking a deficiency judgment.

**FIFTH CAUSE OF ACTION**

**(Judicial Foreclosure of the Dana Point Property)**

**As to Peter Hronis and Laurie Hronis**

133. Conterra incorporates by reference all prior paragraphs in this Complaint.

134. Conterra, by virtue of April Letter Agreement and the other Loan Documents, is entitled to a judgment and decree of foreclosure on the Dana Point Property, the legal description of which is attached to this Complaint as Exhibit P, including a finding that the interests of Conterra in the Dana Point Property are superior to the interests of all Borrowers, Guarantors, the Additional Parties, and Doe Defendants 11-15.

135. Upon sale of the Dana Point Property, Conterra seeks, as provided for by Code of Civil Procedure 726, a deficiency judgment, should any such deficiency exist.

136. Conterra is entitled to its attorneys' fees and costs in foreclosing on the Dana Point Property and seeking a deficiency judgment.

**SIXTH CAUSE OF ACTION**

**(Breach of Guarantees / Deficiency Judgment)**

**As to the Guarantors**

137. Conterra incorporates by reference all prior paragraphs in this Complaint.

138. Each of the Guarantors signed a guarantee in which they agreed to unconditionally guarantee all payments owed under the Loan Documents.

139. Each of the Guarantors have breached their obligations under the Guarantees by failing to tender the sums owed to Conterra under the Loan Documents.

140. Each of the Guarantors and Additional Parties have breached their obligations

under the April Letter Agreement by failing to provide the additional documentation to Conterra to perfect its security interest in the Additional Collateral.

141. Conterra has fully performed all obligations owed by it under the April Letter Agreement and each guarantee.

142. The Guarantors' performance under each guarantee is not excused.

143. Pursuant to the Guarantees, the Guarantors have waived receipt of noticed and demands as to the liabilities of the Borrowers and the Guarantees.

144. As a result of the Guarantors' defaults, Conterra has been damaged in an amount to be proven at trial, but in no event less than $83,020,356.27, with default interest and charges accruing. Upon the judicial sale of the Real Property Collateral, the Dana Point Property, and the Pasadena Property, Conterra seeks entry of a deficiency judgment against Borrowers for the remaining balance of the default, as provided by Code of Civil Procedure 726.

**SEVENTH CAUSE OF ACTION**

**(Replevin and Foreclosure on Personal Property Collateral and Additional Personal Property Collateral)**

**As to Defendants**

145. Conterra incorporates by reference all prior paragraphs in this Complaint.

146. Due to the Borrowers' and Guarantors' default, Conterra is entitled to a judgment for possession for foreclosure of the Personal Property Collateral.

147. Due the breach by Defendants of the April Letter Agreement, Conterra is entitled to a judgment for possession for foreclosure of certain Additional Collateral described below (the "Additional Personal Property Collateral"):

(a) All horses owned by Additional Party Hronis Racing, LLC or in which Additional Party Hronis Racing, LLC (or any affiliate of Hronis Racing, LLC, Borrowers, or Guarantors) has an ownership or partnership interest therein; and

(b) Membership interests of Additional Party Hronis Racing, LLC.

148. Borrowers and Guarantors remain in possession of the Personal Property Collateral and Additional Personal Property Collateral in defiance of Conterra's rights thereto.

149. Conterra demands that possession of the Personal Property Collateral and Additional Personal Property Collateral, and any proceeds thereof, be delivered to Conterra.

150. The failure and refusal to deliver to Conterra the Personal Property Collateral and Additional Personal Property Collateral has damaged Conterra in an amount to be proven at trial, but in no event, no less than $83,020,356.27.

151. Along with possession, Conterra is entitled to judgment for foreclosure of the Personal Property Collateral and Additional Personal Property Collateral, including a finding that the interests of Conterra in the Real Property Collateral are superior to the interests of Borrowers, Guarantors, the Additional Parties, and Doe Defendants 1-5, which Conterra may exercise if necessary to dispose of the respective collateral.

152. By the terms of the Loan Documents, Conterra is entitled to its attorneys' fees and costs in recovering and foreclosing on the Personal Property Collateral and Additional Personal Property Collateral.

## PRAYER

Conterra prays for judgment as follows:

1. For a judgment in its favor of Conterra and against the Borrowers and the Guarantors in the amount of no less than $83,020,356.27, plus all interest, fees, and costs accruing from November 1, 2025 to the date of entry of judgment;

2. For a judgment appointing a receiver to take possession of the Farm Collateral, to operate Borrowers and the Farm Collateral, to collect the rents and proceeds of Borrowers and the Farm Collateral, and to sell the assets of Borrowers and the Farm Collateral;

3. For a judgment and decree of foreclosure on the Deed of Trust against the Real Property Collateral, and for a deficiency judgment after foreclosure;

4. For a judgment and decree of foreclosure on the Deed of Trust against the Pasadena Property, and for a deficiency judgment after foreclosure;

5. For a judgment and decree of foreclosure on the Deed of Trust against the Dana Point Property, and for a deficiency judgment after foreclosure;

6. For a judgment of possession and foreclosure as to the Personal Property

Collateral and the Additional Personal Property Collateral;

7. For an award of attorneys' fees and costs of suit; and

8. For such other and further relief as this Court deems just and proper.

Dated: December 3, 2025

MILLER NASH LLP

By: *s/Bernie Kornberg*
Bernie Kornberg

Attorneys for Plaintiff
Conterra Agricultural Capital, LLC

# EXHIBITS OMITTED

JS 44 ( ev. 04 21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the nited States in September 1 74, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *N N NN M.*

**I. (a) PLAINTIFFS**

Conterra Agricultural Capital, LLC

**(b)** County of esidence of irst Listed Plaintiff Polk County
*N . . L N*

**(c)** Attorneys *ir Na e ddress and ele hone Nu er*

Miller Nash LLP, 340 Golden Shore, Suite 450, Long Beach, CA 90802, 562.247.7652

**DEFENDANTS**

DLP Funding, LLC

County of esidence of irst Listed Defendant Sullivan County
*N . . L N NL*

N T : IN LAND C ND MNATI N CAS S, S T L CATI N T T ACT LAND IN L D.

Attorneys *no n*

**II. BASIS OF JURISDICTION** *lace an in ne o nl*

[ ] 1 .S. Government Plaintiff
[ ] 3 ederal uestion *. . o ern en No a ar*
[ ] 2 .S. Government Defendant
[X] 4 Diversity *ndica e i i enshi o ar ies in e*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *lace an in ne o or lain i and ne o or e endan* *or i ersi ases nl*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citi en of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citi en of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [X] 5 | [X] 5 |
| Citi en or Sub ect of a oreign Country | [ ] 3 | [ ] 3 | oreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *lace an in ne o nl*  Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
[ ] 110 Insurance
[ ] 120 Marine
[ ] 130 Miller Act
[ ] 140 Negotiable Instrument
[ ] 150 ecovery of verpayment nforcement of Judgment
[ ] 151 Medicare Act
[ ] 152 ecovery of Defaulted Student Loans ( xcludes eterans)
[ ] 153 ecovery of verpayment of eteran's Benefits
[ ] 160 Stockholders' Suits
[ ] 1 0 ther Contract
[ ] 1 5 Contract Product Liability
[ ] 1 6 ranchise

**REAL PROPERTY**
[ ] 210 Land Condemnation
[ ] 220 oreclosure
[ ] 230 ent Lease ectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 2 0 All ther eal Property

**TORTS**

**PERSONAL INJURY**
[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel Slander
[ ] 330 ederal mployers' Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor ehicle
[ ] 355 Motor ehicle Product Liability
[ ] 360 ther Personal In ury
[ ] 362 Personal In ury - Medical Malpractice

**PERSONAL INJURY**
[ ] 365 Personal In ury - Product Liability
[ ] 367 ealth Care Pharmaceutical Personal In ury Product Liability
[ ] 368 Asbestos Personal In ury Product Liability

**PERSONAL PROPERTY**
[ ] 370 ther raud
[ ] 371 Truth in Lending
[X] 380 ther Personal Property Damage
[ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
[ ] 440 ther Civil ights
[ ] 441 oting
[ ] 442 mployment
[ ] 443 ousing Accommodations
[ ] 445 Amer. w Disabilities - mployment
[ ] 446 Amer. w Disabilities - ther
[ ] 448 ducation

**PRISONER PETITIONS**
**Habeas Corpus:**
[ ] 463 Alien Detainee
[ ] 510 Motions to acate Sentence
[ ] 530 General
[ ] 535 Death Penalty
**Other:**
[ ] 540 Mandamus ther
[ ] 550 Civil ights
[ ] 555 Prison Condition
[ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
[ ] 625 Drug elated Sei ure of Property 21 SC 881
[ ] 6 0 ther

**LABOR**
[ ] 710 air Labor Standards Act
[ ] 720 Labor Management elations
[ ] 740 ailway Labor Act
[ ] 751 amily and Medical Leave Act
[ ] 7 0 ther Labor Litigation
[ ] 7 1 mployee etirement Income Security Act

**IMMIGRATION**
[ ] 462 Naturali ation Application
[ ] 465 ther Immigration Actions

**BANKRUPTCY**
[ ] 422 Appeal 28 SC 158
[ ] 423 Withdrawal 28 SC 157

**INTELLECTUAL PROPERTY RIGHTS**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 835 Patent - Abbreviated New Drug Application
[ ] 840 Trademark
[ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
[ ] 861 IA (13 5ff)
[ ] 862 Black Lung ( 23)
[ ] 863 DIWC DIWW (405(g))
[ ] 864 SSID Title I
[ ] 865 SI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 Taxes ( .S. Plaintiff or Defendant)
[ ] 871 I S Third Party 26 SC 760

**OTHER STATUTES**
[ ] 375 alse Claims Act
[ ] 376 ui Tam (31 SC 372 (a))
[ ] 400 State eapportionment
[ ] 410 Antitrust
[ ] 430 Banks and Banking
[ ] 450 Commerce
[ ] 460 Deportation
[ ] 470 acketeer Influenced and Corrupt rgani ations
[ ] 480 Consumer Credit (15 SC 1681 or 16 2)
[ ] 485 Telephone Consumer Protection Act
[ ] 4 0 Cable Sat T
[ ] 850 Securities Commodities xchange
[ ] 8 0 ther Statutory Actions
[ ] 8 1 Agricultural Acts
[ ] 8 3 nvironmental Matters
[ ] 8 5 reedom of Information Act
[ ] 8 6 Arbitration
[ ] 8 Administrative Procedure Act eview or Appeal of Agency Decision
[ ] 50 Constitutionality of State Statutes

**V. ORIGIN** *lace an in ne o nl*

[X] 1 riginal Proceeding
[ ] 2 emoved from State Court
[ ] 3 emanded from Appellate Court
[ ] 4 einstated or eopened
[ ] 5 Transferred from Another District *s eci*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct ile

**VI. CAUSE OF ACTION**

Cite the .S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity*** :
28 U.S.C. § 1332

Brief description of cause:
Conversion, intentional interference with contract, and unfair business practices

**VII. REQUESTED IN COMPLAINT:** [ ] C C I T IS IS A **CLASS ACTION** ND L 23, . .Cv.P.

**DEMAND $** at least $6,000,000

C C S only if demanded in complaint:
**JURY DEMAND:** [X] es [ ] No

**VIII. RELATED CASE(S) IF ANY** *ee ins ruc ions* J DG ____ D C T N MB ____

DAT 01/08/2026

SIGNAT ATT N C D /s/ Nicole M. McLaughlin

**FOR OFFICE USE ONLY**

C IPT ____ AM NT ____ APPL ING I P ____ J DG ____ MAG. J DG ____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority or Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the nited States in September 1 74, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** nter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** or each civil case filed, except .S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In .S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (N T : In land condemnation cases, the county of residence of the defendant is the location of the tract of land involved.)

**(c) Attorneys.** nter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section (see attachment) .

**II. Jurisdiction.** The basis of urisdiction is set forth under ule 8(a), . .Cv.P., which requires that urisdictions be shown in pleadings. Place an in one of the boxes. If there is more than one basis of urisdiction, precedence is given in the order shown below.
nited States plaintiff. (1) Jurisdiction based on 28 .S.C. 1345 and 1348. Suits by agencies and officers of the nited States are included here.
nited States defendant. (2) When the plaintiff is suing the nited States, its officers or agencies, place an in this box.
ederal question. (3) This refers to suits under 28 .S.C. 1331, where urisdiction arises under the Constitution of the nited States, an amendment to the Constitution, an act of Congress or a treaty of the nited States. In cases where the .S. is a party, the .S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citi enship. (4) This refers to suits under 28 .S.C. 1332, where parties are citi ens of different states. When Box 4 is checked, the citi enship of the different parties must be checked. (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citi enship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an in one of the seven boxes.
riginal Proceedings. (1) Cases which originate in the nited States district courts.
emoved from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 .S.C., Section 1441.
emanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. se the date of remand as the filing date.
einstated or eopened. (4) Check this box for cases reinstated or reopened in the district court. se the reopening date as the filing date.
Transferred from Another District. (5) or cases transferred under Title 28 .S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 .S.C. Section 1407.
Multidistrict Litigation Direct ile. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** rigin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.** eport the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** xample: .S. Civil Statute: 47 SC 553 Brief Description: nauthori ed reception of cable service.

**VII. Requested in Complaint.** Class Action. Place an in this box if you are filing a class action under ule 23, . .Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary in unction.
Jury Demand. Check the appropriate box to indicate whether or not a ury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding udge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

**Conterra Agricultural Capital, LLC ,**

vs.

**DLP Funding, LLC ,**

**CASE NO: 1:26−CV−00122−CDB**

## SUMMONS IN A CIVIL CASE

TO: **DLP Funding, LLC**

Defendant's Address:

**YOU ARE HEREBY SUMMONED** and required to serve on:

**Nicole Marie McLaughlin**
**Miller Nash LLP**
**340 Golden Shore, Suite 450**
**Long Beach, CA 90802**

an answer to the complaint which is served on you with this summons, **within 21 days after service of this summons on you**, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**KEITH HOLLAND**

CLERK

**/s/ O. Rivera**

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
Eastern District of California

**ISSUED ON 2026−01−08 15:10:01**
**CLERK, USDC EDCA**

**RETURN OF SERVICE**

| Service of the Summons and complaint was made by me (1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: ______________________________________
______________________________________________________________________

☐ Left copies thereof at the defendant's dwelling house or usual place of bode with a person of suitable age and discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:______________________________

☐ Returned unexecuted:______________________________________________________________
______________________________________________________________________
______________________________________________________________________

☐ Other (specify) :______________________________________________________________
______________________________________________________________________
______________________________________________________________________

**STATEMENT OF SERVICE FEES**

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ______________________ ______________________________________
Date *Signature of Server*

______________________________________
*Address of Server*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**CONTERRA AGRICULTURAL CAPITAL, LLC ,**

Plaintiff,

vs.

**DLP FUNDING, LLC ,**

Defendants.

_______________________________________ /

**NO. 1:26−CV−00122−CDB**

**ORDER SETTING MANDATORY SCHEDULING CONFERENCE**

**DATE: April 1, 2026**
**TIME: 09:30 AM**

**CHRISTOPHER D. BAKER**
**U.S. MAGISTRATE JUDGE**

Rule 16, F.R.Civ.P., requires the Court to enter a Scheduling Conference Order within 90 days of the date of the Complaint being served upon the defendant. Therefore, it is ordered that you appear for a formal Scheduling Conference before United States Magistrate Judge Christopher D. Baker, at the United States Courthouse, 510 19th Street, Bakersfield, CA 93301.

The Court is unable to conduct a scheduling conference until defendants have been served with the summons and complaint. Accordingly, plaintiff(s) shall diligently pursue service of summons and complaint and dismiss those defendants against whom plaintiff(s) will not pursue claims. Plaintiff(s) shall promptly file proofs of service of the summons and complaint so the Court has a record of service. Counsel are referred to Fed.R.Civ.P., Rule 4 regarding the requirement of timely service of the complaint. Failure to timely serve the summons and complaint may result in the imposition of sanctions, including the dismissal of unserved defendants.

/////

Due to the mandates of Rule 16, this Order may be served upon counsel for the plaintiff(s) before appearances of defendant(s) are due. It is the obligation of counsel for the plaintiff(s) to serve a copy of this Order on the defendant(s), or, if identified, on their counsel, **promptly** upon receipt of this Order, and to file an appropriate proof of such service with the Court, in compliance with Rule 135(a) of the Local Rules of Practice for the Eastern District of California.

Attendance at the Scheduling Conference is *mandatory* upon each party not represented by counsel or, alternatively, by retained counsel. Only counsel who are thoroughly familiar with the facts and the law of the instant case, and who have full authority to bind his or her client, shall appear. Trial counsel should participate in this Scheduling Conference whenever possible. It may be necessary for counsel to spend as much as 45 minutes in this Conference.

A Joint Scheduling Report, carefully prepared and executed by all counsel, shall be electronically filed in CM/ECF, one (1) full week prior to the Scheduling Conference, and shall be e-mailed, in Word format, to **cdborders@caed.uscourts.gov**.

For reference purposes, the Court requires that the Joint Scheduling Report indicate the date, time, and chambers of the Scheduling Conference opposite the caption on the first page of the Report.

Among other things, counsel will be expected to discuss the possibility of settlement. Counsel shall thoroughly discuss settlement with each other before undertaking the preparation of the Joint Scheduling Report and engaging in extensive discovery. However, even if settlement negotiations are progressing, counsel are expected to comply with the requirements of this Order unless otherwise excused by the Court. If the case is settled, please **promptly** inform the Court, and counsel's presence, as well as the Joint Scheduling Report, will not be required.

The parties shall appear at the conference remotely via Zoom video conference, and counsel may obtain the Zoom ID and password from the Courtroom Deputy (CBoren@caed.uscourts.gov) prior to the conference.

At least twenty (20) days prior to the Mandatory Scheduling Conference, the actual trial counsel for all parties shall conduct and conclude a conference at a time and place arranged by counsel for the plaintiff(s). This conference should preferably be a personal conference between all counsel but, due to the distances

/////

involved in this District, a telephonic conference call involving all counsel is permissible. The Joint Scheduling Report shall respond to the following items by corresponding numbered paragraphs:

**Form and Contents of the Joint Scheduling Report**

1. Summary of the factual and legal contentions set forth in the pleadings of each party, including the relief sought by any party, presently before the Court.

2. If a party intends to seek amendment of a pleading, the parties shall discuss the proposed amendment and include the results of the discussion in the Scheduling Conference Report.

3. A summary detailing the uncontested and contested facts.

4. A summary of the legal issues as to which there is no dispute, i.e., jurisdiction, venue, applicable federal or state law, etc., as well as a summary of the disputed legal issues.

5. The status of all matters which are presently set before the Court, i.e., hearing all motions, etc.

6. A complete and detailed discovery plan addressing the following:

(a) A date for the exchange of initial disclosures required by Fed.R.Civ.P. 26(a)(1) or a statement that disclosures have already been exchanged;

(b) A firm cut-off date for non-expert discovery;

(c) A firm date(s) for disclosure of expert witnesses as required by Fed.R.Civ.P. 26(a)(2);

(d) A firm cut-off date for expert witness discovery;

(e) Any proposed changes in the limits on discovery imposed by Fed.R.Civ.P. 26(b); 30(a)(2)(A), (B) or (C); 30(d); or 33(a);

(f) Whether the parties anticipate the need for a protective order relating to the discovery of information relating to a trade secret or other confidential research, development, or commercial information;

(g) Any issues or proposals relating to the timing, sequencing, phasing or scheduling of discovery;

(h) Whether the parties anticipate the need to take discovery outside the United States and, if so, a description of the proposed discovery;

(i) Whether any party anticipates video and/or sound recording of depositions;

(j) A proposed date for a Mid-Discovery Status Report and Conference;

/////

7. Discovery relating to Electronic, Digital and/or Magnetic data.

Prior to a Fed.R.Civ.P. 26(f) conference, counsel should carefully investigate their client's information management system so that they are knowledgeable as to its operation, including how information is stored and how it can be retrieved. Likewise, counsel shall reasonably review the client's computer files to ascertain the contents thereof; including archival and legacy data (outdated formats or media), and disclose in initial discovery (self-executing routine discovery) the computer based evidence which may be used to support which may be used to support claims or defenses.

(A) Duty to Notify. A party seeking discovery of computer-based information shall notify the opposing party immediately, but no later than the Fed.R.Civ.P. 26(f) conference, of that fact and identify as clearly as possible the categories of information which may be sought.

(B) Duty to Meet and Confer. The parties shall meet and confer regarding the following matters during the Fed.R.Civ.P. 26(f) conference:

(i) Computer-based information (in general). Counsel shall attempt to agree on steps the parties will take to segregate and preserve computer-based information in order to avoid accusations of spoilation;

(ii) E-mail information. Counsel shall attempt to agree as to the scope of e-mail discovery and attempt to agree upon an e-mail search protocol. This should include an agreement regarding inadvertent production of privileged e-mail messages;

(iii) Deleted information. Counsel shall confer and attempt to agree whether or not restoration of deleted information may be necessary, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration; and

(iv) Back-up data. Counsel shall attempt to agree whether or not back-up data may be necessary, the extent to which backup data is needed and who will bear the cost of obtaining back-up data. The Joint Scheduling Report shall summarize the parties conference relating to discovery of electronic data.

8. Dates agreed to by all counsel for:

(a) Filing non-dispositive[1] and dispositive[2] pre-trial motions with the understanding that motions (except motions in *limine* or other trial motions) will not be entertained after the agreed upon date.

/////

[1]Motions to compel discovery, amend, remand, etc.
[2]Motions for summary adjudication or to dismiss, strike, etc.

(b) Pre-Trial Conference date. (Set according to the assigned judge's preferences as noted on the worksheet.)

(c) Trial date. (Eight weeks after the pretrial hearing.)

(d) All dates should be considered firm dates and should be set according to the time frames set forth on the scheduling conference worksheet.

9. At the conference referred to above, counsel are encouraged to discuss settlement, and the Court will expect a statement in the Joint Scheduling Report as to the possibility of settlement. Counsel shall indicate when they feel a settlement conference is desired, i.e., before further discovery, after discovery, after pre-trial motions, etc.

10. A statement as to whether the case is a jury or non-jury case. If the parties disagree as to whether a jury trial has been timely demanded or whether one is available on some or all of the claims, the statement shall include a summary of each party's position.

11. An estimate of the number of trial days required. When counsel cannot agree, each party shall give his or her best estimate. In estimating the number of trial days, counsel should keep in mind that this court is normally able to devote the entire day to trial.

12. The case opening documents in this action included important information and a form for completion and filing by all parties regarding consent/decline to magistrate judge jurisdiction. Because the District Judges' docket is extremely impacted, the parties are required to consider and address the issue of whether they will consent to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. section 636(c). Accordingly, all parties must file completed consent/decline forms no later than the date for filing the Joint Scheduling Report (i.e., one week in advance of the Scheduling Conference). All non-dispositive motions are routinely heard by the Magistrate Judge whether or not the parties consent.

13. Whether either party requests bifurcation or phasing of trial or has any other suggestion for shortening or expediting discovery, pre-trial motions or trial.

14. Whether this matter is related to any matter pending in this court or any other court, including any bankruptcy court.

15. Joint Scheduling Reports are to be e-mailed, in Word format, to **cdborders@caed.uscourts.gov**.

/////

16. The parties shall jointly complete and file along with the Joint Scheduling Report a "Scheduling Conference Worksheet" on the form attached to this Order. The form shall be completed in full and consistently with the information in the Joint Scheduling Report and take into account all dates and intervals reflected therein.

**SHOULD COUNSEL OR A PARTY APPEARING *PRO SE* FAIL TO APPEAR AT THE MANDATORY SCHEDULING CONFERENCE, OR FAIL TO COMPLY WITH THE DIRECTIONS AS SET FORTH ABOVE, AN EX PARTE HEARING MAY BE HELD AND JUDGMENT OF DISMISSAL, DEFAULT, OR OTHER APPROPRIATE JUDGMENT MAY BE ENTERED, OR SANCTIONS, INCLUDING CONTEMPT OF COURT, MAY BE IMPOSED AND/OR ORDERED.**

DATED: January 8, 2026

/s/ Christopher D. Baker
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**CONTERRA AGRICULTURAL CAPITAL, LLC,**

Plaintiff,

v.

**DLP FUNDING, LLC,**

Defendant(s).
_______________________________________/

No. **1:26−cv−00122−CDB**

INITIAL SCHEDULING ORDER, CASES ASSIGNED UNDER APP. A, SUB (M)

This action has been assigned to a Magistrate Judge under the court's automated case assignment plan. See Local Rules, Appendix A, subsection (m).

Should the parties wish to consent to the jurisdiction of the Magistrate Judge for all purposes, including for the entry of final judgment, they may do so using the "Consent to Assignment or Request for Reassignment" form. See 28 U.S.C. § 636(c). There is no obligation to consent, and the judges will not be notified of a party's designation unless all parties have consented. See Fed. R. Civ. P. 73(b)(1). If any party requests reassignment to a United States District Judge, the Clerk of the Court will assign a random District Judge as presiding judge, with the Magistrate Judge continuing for those purposes anticipated by the Local Rules. Because a consent designation assists the court in determining how the action will be administratively processed, the parties are instructed to make their election promptly and notify the Clerk of the Court as soon as practicable.

/////

Under Federal Rule of Civil Procedure 16 and Local Rule 240, IT IS HEREBY ORDERED:

1. When serving process under Rule 4, plaintiff(s) shall provide each defendant with a copy of this order and the consent information attached to this order. Within 10 days after service of process on a given defendant, plaintiff(s) shall file a certificate stating that the defendant was served under Rule 4.[1]

2. **Each party shall return the "CONSENT / DECLINE OF U.S. MAGISTRATE JUDGE JURISDICTION" form to the Clerk within 90 days from the date the action was filed, or within 14 days of removal from state court.** The parties are strongly encouraged to submit their consent forms before the filing of any motion, so the motion can be noticed before the proper judge. Failure to do so may result in the court vacating a hearing or declining to resolve the motion until all consent designations have been submitted.

3. Within 30 days of the filing of an answer to the complaint, the parties shall file a joint status report addressing the relevant portions of Local Rule 240(a) to facilitate the entry of a pretrial scheduling order. Therein, the parties may propose dates for a hearing based on the court's available hearing dates or may agree the court can enter a scheduling order without the need for a hearing.

4. The parties are directed to the undersigned's Standing Orders, located on the court's web page at www.caed.uscourts.gov. The parties should take note of the page limits assigned to civil motions and discovery joint statements. The parties are responsible for knowing and complying with the court's standing orders.

5. The parties are reminded of their continuing duty to notify chambers immediately of any settlement or other disposition. See Local Rule 160.

/s/ CHRISTOPHER D. BAKER
UNITED STATES MAGISTRATE JUDGE

[1]Alternatively, if this action was removed from state court, the removing party shall immediately serve upon each of the other parties, and upon all parties subsequently joined, a copy of this order, and shall file with the Clerk a notice that the parties have been served.

# SCHEDULING CONFERENCE WORKSHEET

(The parties **SHALL** attach this completed worksheet to their joint scheduling report)

**CASE NAME:** ________________________________________

**CASE NUMBER:** ________________________________________

**SCHEDULING CONFERENCE DATE:** ________________________________________

**APPEARANCES:**

PLAINTIFF(S): ________________________________________

DEFENDANT(S): ________________________________________

## I. PRELIMINARY MATTERS

**A. Is there joint consent to magistrate judge jurisdiction?**

Yes: _____ No: _____

**B. Has the answer been filed?**

Yes: _____ No: _____ (If No, explain in the Joint Report.)

**C. Are pleading amendments anticipated?**

Yes: _____ No: _____ Proposed deadline: ___________________________
(If proposing other than around the mid-point of discovery, explain in the Joint Report.)

**D. Have initial disclosures per Rule 26 been completed?**

Yes: _____ No: _____ If No, enter the proposed deadline: ___________________________
(If proposing more than 30 days after the scheduling conference, explain in the Joint Report.)

## II. DISCOVERY

The intervals indicated in this section are believed by the Court to be appropriate. However, if the parties agree that other reasonable intervals better suit their case, they may so provide and explain their reasoning in the Joint Report.

**A. Non-Expert Discovery Cut-Off:** ____________________
(Generally, six months from scheduling conference date.)

**B. Expert Disclosure Deadline:** ____________________
(Generally, one to two weeks after non-expert discovery deadline.)

**C. Rebuttal Expert Disclosure Deadline:** ____________________
(Generally, two to four weeks after initial expert disclosure.)

**D. Expert Discovery Cut-Off:** ____________________
(Generally, 30 days after rebuttal expert disclosure.)

**E. Mid-Discovery Status Conference:** ____________________
(Generally, five weeks prior to non-expert discovery Cut-off.)

**F. Non-Dispositive Motions:**

**1. Filing Deadline:** ____________________
(Within two weeks of close of expert discovery.)

**2. Hearing Deadline:** ____________________
(Five weeks later and set per the assigned judge's schedule re: motion hearings.)

## III. COURT-SUPERVISED ACTIVITIES[1]

**A. Dispositive Motions:**

**1. Filing Deadline:** ____________________
(Generally, within 2 to 4 weeks of the hearing on the non-dispositive motions.)

**2. Hearing Date:** ____________________

(Six weeks after dispositive motion filing deadline.)
Judge Thurston: Tuesday, Wednesday or Thursday at 8:30 a.m..
Judge Sherriff: Monday at 1:30 p.m..
Judge Baker: 5 weeks after dispositive motion filing deadline.

**B. Pretrial Conference Date:** ____________________

Judge Thurston: 8 weeks after the dispositive motion hearing, Monday at 1:30 p.m..
Judge Sherriff: 4 months after dispositive motion hearing; Monday at 1:30 p.m..
Judge Baker: 6 weeks after the dispositive motion hearing.

**C. Proposed Trial Date:** ____________________

(Eight weeks after the pretrial conference.)
Judge Thurston: Tuesday at 8:30 a.m.
Judge Sherriff: Tuesday at 8:30 a.m.
Judge Baker: Monday at 8:30 a.m.

## IV. MISCELLANEOUS MATTERS

**A. Bifurcation of issues requested?**

Yes: _____ No: _____ (If Yes, explain in the Joint Report.)

**B. Do all parties believe an early settlement conference could be productive?**

Yes: _____ No: _____

**C. Identify any other issues a party wants to address at the Scheduling Conference, including:**

− Misjoinder of claims
− Setting a date for settlement conference with a magistrate judge
− Referral to the court's Voluntary Dispute Resolution Program.

[1] The intervals specified in this section may **not** be shortened.

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA
501 I STREET, SUITE 15-220
SACRAMENTO, CA 95814

Chambers of
**TROY L. NUNLEY**
Chief United States District Judge

**Magistrate Judge Consent in Civil Cases: Know Your Rights!**

Delay, congestion, uncertainty, and expense are concerns often expressed by civil litigants. These concerns have reached a crisis level in the Eastern District of California.

Despite the population of our District nearly doubling since 1979 and a corresponding tremendous increase in case filings, for the past 40 years our court has only 6 authorized District Judgeship positions. The U.S. Judicial Conference, the policy-making arm of the federal courts, has recommended for decades that Congress authorize between 5 and 11 new judgeships for this court. While the court is doing what it can to ensure Congress is fully informed regarding our current proposed allocation of 5 new judgeships, we cannot at this point say there is a realistic hope of new District Judgeships in the foreseeable future.

As a result, the Eastern District has been significantly congested for many years, consistently carrying average weighted caseloads equal or close to twice the national average for federal trial courts. Given our current more dire circumstances, civil litigants are having to vie for less and less District Judge time and attention. Civil litigants therefore may wish to consider consenting to Magistrate Judge jurisdiction, given that the court has a full complement of experienced Magistrate Judges available to preside to the full extent allowed by law.

The Magistrate Judge consent process can help bring about the "just, speedy, and inexpensive determination" of federal cases. Fed. R. Civ. P. 1. Although their title has changed periodically, Magistrate Judges, as they currently are known, have had a role in the federal courts since passage of the Judiciary Act of 1789. Over time, Congress has expanded and enhanced the position in the interests of maximizing judicial efficiency. Specifically, Magistrate Judges are authorized "to conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case" with the consent of the parties. 28 U.S.C. § 636(c). Consent can maximize access to the courts and ease court congestion through effective use of judicial resources. It can provide numerous benefits to litigants including the prospect of an early and firm trial date, when District Judges may not be available to try a civil case given the need to prioritize felony criminal cases.

In civil cases, the assigned Magistrate Judge already is responsible for resolving discovery disputes, deciding other non-dispositive motions and in some instances handling pre-trial proceedings; as a result that judge may be intimately familiar with the case history. Consenting in any civil case allows the Magistrate Judge to decide dispositive motions and preside over trial, and so can avoid the uncertainty parties may face while waiting for the District Judge to identify time on his or her calendar for trial. Just as with a judgment issued by a District Judge, a judgment issued by a Magistrate Judge to whom the parties in a civil case have consented is appealable directly to the Ninth Circuit Court of Appeals.

As their professional biographies posted on our court's website show, our Magistrate Judges are well-qualified to preside over the cases assigned them. They are experienced, high-caliber judges

with diverse experiences in civil and criminal litigation who have been selected on the merits, taking into account their education, experience, knowledge of the court system, personal attributes and other criteria. Our Magistrate Judges are well-qualified to preside over the civil cases brought in our court. To consent to magistrate judge jurisdiction, a party simply signs and files a consent form. The form is available on the court's website, at this link:

http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/.

Parties may consent or withhold consent without any adverse consequences. Once all parties to a case consent, then the assigned District Judge is notified and considers whether to approve the consent. Once the District Judge accepts, then the Magistrate Judge determines whether to accept consent jurisdiction, taking the opportunity to consider any conflicts or bases for recusal.

All litigants before the federal courts deserve justice delivered in a fair, prompt, and efficient manner. Our Magistrate Judges play a critical role in providing essential access to justice, particularly in our overburdened court. Consenting to Magistrate Judge jurisdiction in civil cases may represent one of the best ways to secure "just, speedy, and inexpensive determination" of your case, which is why we want to be sure you are fully aware of your right and ability to consent, and the means of doing so.

Troy L. Nunley
Chief United States District Judge

**NOTICE OF AVAILABILITY OF A MAGISTRATE JUDGE**

**TO EXERCISE JURISDICTION AND APPEAL INSTRUCTIONS**

You are hereby notified in accordance with 28 U.S.C §636(c), F.R.Civ.P.73 and Local Rule 305, the United States Magistrate Judges sitting in Sacramento and Fresno are available to exercise the court's case-dispositive jurisdiction and to conduct any or all case-dispositive proceedings in this action, including motions to dismiss, motions for summary judgment, a jury or non jury trial, and entry of a final judgment. Exercise of this jurisdiction by a Magistrate Judge is however, permitted only if all parties voluntarily consent. You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's case-dispositive jurisdiction from being exercised by a Magistrate Judge.

Any appeal from a judgment entered by a Magistrate Judge is taken directly to the United States Court of Appeals for the Ninth Circuit or, where appropriate, for the Federal Circuit in the same manner as an appeal from any other judgment of a District Court.

Whether or not the parties consent pursuant to 28 U.S.C. § 636(c), the assigned Magistrate Judge will hear all motions except those case-dispositive motions set forth in 28 U.S.C. § 636(b)(1)(A).

A copy of the Form for "Consent to / Decline of Jurisdiction of United States Magistrate Judge" is attached hereto for pro per use and attorney information. This form is available in fillable .pdf format on the court's web site at www.caed.uscourts.gov for all attorney ECF filers. This form may be filed through CM/ECF or by pro se litigants at the appropriate Clerk's Office location.

Office of the Clerk
501 I Street, Room 4−200
Sacramento, CA 95814

Office of the Clerk
2500 Tulare Street, Suite 1501
Fresno, CA 93721

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CONTERRA AGRICULTURAL CAPITAL, LLC ,**
Plaintiff(s) / Petitioner(s),

vs.

**DLP FUNDING, LLC ,**
Defendant(s) / Respondent(s).

CASE NO: **1:26−CV−00122−CDB**

**CONSENT / DECLINE OF U.S. MAGISTRATE JUDGE JURISDICTION**

**IMPORTANT**

**IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

☐ **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: ____________________ Signature: _________________________________

Print Name: _________________________________

( ) Plaintiff / Petitioner ( ) Defendant / Respondent

Counsel for_____________________________________*

☐ **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: ____________________ Signature: _________________________________

Print Name: _________________________________

( ) Plaintiff / Petitioner ( ) Defendant / Respondent

Counsel for_____________________________________*

***If representing more than one party, counsel must indicate the name of each party responding.***

**NOTICE OF AVAILABILITY**

**VOLUNTARY DISPUTE RESOLUTION**

Pursuant to the findings and directives of Congress in 28 U.S.C. §§ 651 *et seq.*, and in recognition of the economic burdens and delay in the resolution of disputes that can be imposed by full formal litigation, Local Rule 271 governs the referral of certain actions to the Voluntary Dispute Resolution Program ("VDRP") at the election of parties. Plaintiff or removing party is to provide all other parties with copies of the notice at the time service is effected or, for parties already served, no more than fourteen (14) days after receiving notice from the Court. After filing of the original complaint or removal action, any party who causes a new party to be joined in the action shall promptly serve a copy of the notice on the new party.

It is the Court's intention that the VDRP shall allow the participants to take advantage of a wide variety of alternative dispute resolution methods. These methods may include, but are not limited to, mediation, negotiation, early neutral evaluation and settlement facilitation. The specific method or methods employed will be determined by the Neutral and the parties.

**PLEASE TAKE NOTICE** that pursuant to Local Rule 271, ***this Local Rule applies to*** all civil actions pending before any District Judge or Magistrate Judge in the District except that actions in the following categories are exempt from presumptive inclusion: (i) prisoner petitions and actions, including habeas corpus petitions, (ii) actions in which one of the parties is appearing pro se, (iii) voting rights actions, (iv) social security actions, (v) deportation actions, (vi) Freedom of Information Act actions, and (vii) actions involving the constitutionality of federal, state or local statutes or ordinances. The fact that a case falls in a category that is exempt from the presumptive applicability of this Local Rule neither (1) precludes the parties to such a case from agreeing to participate in an Alternative Dispute Resolution ("ADR") process, nor (2) deprives the Court of authority to compel participation in an appropriate ADR proceeding.

Parties may elect Voluntary Dispute Resolution with the Court indicating that all parties to the action agree to submit the action to VDRP pursuant to Local Rule 271. Actions may not be assigned to VDRP over the objection of a party. (Copy of sample stipulation attached hereto.) **At the time of filing, a copy of the stipulation shall be provided to the VDRP Administrator designated below:**

Sacramento Cases
Voluntary Dispute Resolution
Program Administrator
United States District Court
501 "I" Street, Suite 4−200
Sacramento, CA 95814
(916) 930−4278

Fresno Cases
Voluntary Dispute Resolution
Program Administrator
United States District Court
2500 Tulare Street, Suite 1501
Fresno, CA 93721
(559) 499−5600

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**CONTERRA AGRICULTURAL CAPITAL, LLC ,**

Plaintiff(s)

v.

**DLP FUNDING, LLC ,**

Defendant(s)

NO: **1:26−CV−00122−CDB**

STIPULATION TO ELECT REFERRAL OF ACTION TO VOLUNTARY DISPUTE RESOLUTION PROGRAM (VDRP) PURSUANT TO LOCAL RULE 271

---

Pursuant to Local Rule 271, the parties hereby agree to submit the above−entitled action to the Voluntary Dispute Resolution Program.

DATED: **JANUARY 8, 2026**

______________________________
Name:
Attorney for Plaintiff(s)

______________________________
Name:
Attorney for Defendant(s)

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

**Conterra Agricultural Capital, LLC ,**

vs.

**DLP Funding, LLC ,**

**CASE NO: 1:26−CV−00122−CDB**

## SUMMONS IN A CIVIL CASE

TO: **DLP Funding, LLC**

Defendant's Address:

**YOU ARE HEREBY SUMMONED** and required to serve on:

**Nicole Marie McLaughlin**
**Miller Nash LLP**
**340 Golden Shore, Suite 450**
**Long Beach, CA 90802**

an answer to the complaint which is served on you with this summons, **within 21 days after service of this summons on you**, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**KEITH HOLLAND**
CLERK

**/s/ O. Rivera**
(By) DEPUTY CLERK

**ISSUED ON 2026−01−08 15:10:01**
**CLERK, USDC EDCA**

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me (1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: ______________________

☐ Left copies thereof at the defendant's dwelling house or usual place of bode with a person of suitable age and discretion then residing therein.

☐ Name of person with whom the summons and complaint were left: ______________________

☐ Returned unexecuted: ______________________

☒ Other (specify) : Service effected pursuant to Cal. Civ. Proc. Code section 415.40, as incorporated by Federal Rule of Civil Procedure 4(e). Please see Attachment "A" for service details.

**STATEMENT OF SERVICE FEES**

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on 02/25/2026
Date

[signature]
*Signature of Server*

340 Golden Shore, Ste 450, Long Beach, CA
*Address of Server*

**ATTACHMENT "A"**
**DECLARATION OF MAILING**

I, Sheila W. Gonzalez, declare that I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is **340 Golden Shore, Suite 450, Long Beach, California 90802**.

On January 26, 2026, I served a copy of the foregoing documents: **(1) Complaint; (2) Summons; (3) Order Setting Mandatory Settlement Conference; (4) Initial Scheduling Order; (5) Scheduling Conference Worksheet; (6) Magistrate Judge Consent; (7) Civil Case Cover Sheet; (8) Notice of Availability Voluntary Dispute Resolution**, by the following indicated method or methods on:

**DLP Funding, LLC**
**447 Broadway, 2nd Fl., #805**
**New York, NY 10013**

☒ **BY UNITED STATES CERTIFIED MAIL.** I enclosed the document(s) in a sealed envelope or package addressed to the person(s) listed below and deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on February 25, 2026, at Long Beach, California.

Sheila W. Gonzalez

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

New York, NY 10013

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0008 |
| | $4.40 | 15 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $25.10 | |
| Total Postage and Fees | $34.80 | 01/26/2026 |

Sent To: DLP Funding, LLC
Street and Apt. No., or PO Box No.: 447 Broadway, 2nd Fl Suite 805
City, State, ZIP+4®: New York, NY 10013

PS Form 3800, January 2023 — See Reverse for Instructions

9589 0710 5270 2532 0709

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Monticello, NY 12701

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0008 |
| | $4.40 | 15 |
| Extra Services & Fees (check box, add fee as appropriate) | $0.00 | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $25.10 | |
| Total Postage and Fees | $34.80 | 01/26/2026 |

Sent To: DLP Funding LLC c/o Agent
Street and Apt. No., or PO Box No.: 101 Lake Shore Dr.
City, State, ZIP+4®: Monticello, NY 12701

PS Form 3800, January 2023 — See Reverse for Instructions

9589 0710 5270 2532 0709 16

Aryeh Kaufman, Esq. (SBN 289745)
aryeh@akaufmanlegal.com
**LAW OFFICE OF ARYEH KAUFMAN**
5482 Wilshire Blvd, PMB 1907
Los Angeles, CA 90036
Tel: (323) 943-2566
Fax: (213) 402-8598

*Attorneys for Defendant*
**DLP FUNDING, LLC**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONTERRA AGRICULTURAL CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DLP FUNDING, LLC,<br><br>Defendants. | Case No.: 1:26-CV-00122-CDB<br><br>Hon. Christopher D. Baker<br><br>**STIPULATION TO EXTEND TIME TO FILE RESPONSIVE PLEADING AND CONTINUE DATE OF MANDATORY SCHEDULING CONFERENCE**<br><br>[No Hearing Requested] |

This stipulation by and between Plaintiff, CONTERRA AGRICULTURAL CAPITAL, LLC, ("Plaintiff"), by and through its counsel, Bernard J. Kornberg, Esq. and Nicole M. McLaughlin, Esq. of MILLER NASH LLP; and DLP FUNDING, LLC ("Defendant") by and through its counsel, Aryeh Kaufman, Esq. (collectively, "the Parties") is made with reference to the following facts:

1. On January 8, 2026, Plaintiff filed a Complaint against the Defendant in the United States District Court, Eastern District of California. ECF No. 1.

2. The Summons and Complaint were sent to Defendant via United States Certified Mail on January 26, 2026.

3. Pursuant to the Summons, Defendant was required to serve a responsive pleading within 21 days after service thereof, plus an additional 10 days based on the method of service. A responsive pleading would therefore become due on February 26, 2026.

4. The Parties have met and conferred and agreed to extend the time for Defendant to file a responsive pleading to March 31, 2026.

5. Defendant recently retained counsel to defend this action. A continuance of the responsive pleading deadline promotes justice, avoids prejudice to Defendant, and allows the action to be litigated on the merits.

6. The Parties have also agreed, given the Jewish holiday of Passover, to continue the Mandatory Scheduling Conference, which is currently set on April 1, 2026, at 9:30 a.m., to May 7, 2026, at 9:30 a.m., or a date thereafter that is convenient for the Court.

**NOW, THEREFORE, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

The Defendant shall have up to and including March 31, 2026, to file a responsive pleading in this action.

The Mandatory Scheduling Conference is continued from April 1, 2026, at 9:30 a.m., to May 7, 2026, at 9:30 a.m., provided that this date is also available for the Court.

Date: March 18, 2026

MILLER NASH LLP

By: */s/ Bernard J. Kornberg*
Bernard J. Kornberg, Esq.
*Counsel for Plaintiff*

Date: March 18, 2026

LAW OFFICE OF ARYEH KAUFMAN

By: */s/ Aryeh Kaufman*
Aryeh Kaufman, Esq.
*Counsel for Defendant*

**PROPOSED ORDER**

The Court, having reviewed the foregoing Stipulation, and for good cause appearing therefore:

IT IS HEREBY ORDERED that Defendant, DLP FUNDING LLC, is granted an extension of time to file a responsive pleading. Defendant's responsive pleading shall be due on March 31, 2026.

IT IS ALSO ORDERED that the Mandatory Scheduling Conference, currently set for April 1, 2026 at 9:30 a.m., is continued to _____________ 2026 at 9:30 a.m.

IT IS SO ORDERED.

Dated: ____________________

____________________________________
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONTERRA AGRICULTURAL CAPITAL, LLC,

Plaintiff,

v.

DLP FUNDING, LLC,

Defendant.

Case No. 1:26-cv-00122-CDB

ORDER ON STIPULATION EXTENDING *NUNC PRO TUNC* TIME FOR DEFENDANT TO RESPOND TO PLAINTIFF'S COMPLAINT

(Doc. 5)

ORDER CONTINUING SCHEDULING CONFERENCE

(Doc. 3)

Plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") initiated this action with the filing of a complaint against Defendant DLP Funding, LLC ("Defendant") on January 8, 2026. (Doc. 1).

Pending before the Court is the parties' stipulated request to extend the time for Defendant to respond to Plaintiff's complaint from February 26, 2026, to March 31, 2026, filed on March 18, 2026. (Doc. 5). In support, the parties represent that Defendant recently retained counsel to defend in this action and that a continuance of the responsive pleading deadline promotes justice, avoids prejudice to Defendant, and allows the action to be litigated on the merits. *Id.* ¶ 5. The parties additionally request that the Court continue the scheduling conference set for April 1, 2026, to May 7, 2026, given the Jewish holiday of Passover. *Id.* ¶ 6.

Requests for extensions of time in the Eastern District of California are governed by Local Rule 144, which provides: "Counsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent." L.R. 144(d). That rule further provides, "Requests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor." *Id.*

While the Court finds good cause to grant the parties' request based on the representation that Defendant sought the instant stipulation after recently obtaining counsel, here, it should have become apparent to Defendant that it required an extension of time to file a responsive pleading before the February 26, 2026, deadline—not after it had passed. The Court disfavors granting relief *nunc pro tunc* and admonishes the partes to exercise better care and to adhere to this Court's Local Rules in all future filings. In light of the parties' representations and for good cause shown, the Court will continue the scheduling conference.

**<u>Conclusion and Order</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant shall file its response to Plaintiff's complaint no later than **March 31, 2026**. *See* L.R. 144(a).
2. The scheduling conference set for April 1, 2026, is continued to **May 7, 2026, at 10:00 AM.** As previously directed (Doc. 3), the parties shall file a joint scheduling report at least one week prior to the conference.

IT IS SO ORDERED.

Dated: **March 19, 2026**

UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CONTERRA AGRICULTURAL CAPITAL, LLC ,**
Plaintiff(s) / Petitioner(s),

vs.

**DLP FUNDING, LLC ,**
Defendant(s) / Respondent(s).

CASE NO: **1:26−CV−00122−CDB**

**CONSENT / DECLINE OF U.S. MAGISTRATE JUDGE JURISDICTION**

**IMPORTANT**

**IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

☐ **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: ____________________ Signature: ________________________________

Print Name: ________________________________

( ) Plaintiff / Petitioner ( ) Defendant / Respondent

Counsel for____________________________________*

☒ **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: March 31, 2026 Signature: Aryeh Kaufman

Print Name: Aryeh Kaufman, Esq.

( ) Plaintiff / Petitioner (x) Defendant / Respondent

Counsel for DLP Funding, LLC *

***If representing more than one party, counsel must indicate the name of each party responding.***

Aryeh Kaufman, Esq. (SBN: 289745)
aryeh@akaufmanlegal.com
**LAW OFFICE OF ARYEH KAUFMAN**
5482 Wilshire Blvd., PMB 1907
Los Angeles, CA 90036
Tel: (323) 943-2566
Fax: (213) 402-8598

*Attorneys for Defendant*
**DLP FUNDING, LLC**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONTERRA AGRICULTURAL CAPITAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DLP FUNDING, LLC,<br><br>Defendants. | Case No. 1:26-CV-00122-CDB<br><br>Assigned to Hon. Christopher D. Baker<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. RULES 12(b)(1), 12(b)(2), 12(b)(3), AND *FORUM NON COVENIENS***<br><br>Hearing Date: May 6, 2026<br>Time: 10:30 a.m.<br><br>Trial Date: None Set<br>Action Filed: January 8, 2026 |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2026, at 10:30 a.m., or as soon thereafter may be heard, in the United States Courthouse for the United States District Court, Eastern District of California, located at 510 19th Street, Suite 200, Bakersfield, CA 93301, Defendant DLP FUNDING, LLC (hereinafter "Defendant" or "DLP"), will move for an order to dismiss Plaintiff CONTERRA AGRICULTURAL CAPITAL, LLC's ("Plaintiff" or "Conterra") Complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1); lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2); and improper venue pursuant to Federal Rules of Civil Procedure, Rule 12(b)(3). In the alternative, Defendant moves to dismiss Plaintiff's Complaint pursuant to *forum non conveniens*, based on the forum selection clause in the Merchant and Security Agreement ("MSA") between Defendant and non-party California debtors ("California Debtors").

The Motion to Dismiss is based on the grounds that:

1. Under Fed. R. Civ. P. 12(b)(1), this Court lacks subject matter jurisdiction because:
    a. Plaintiff lacks Article III standing because it has failed to allege a concrete, non-speculative injury fairly traceable to DLP.
    b. Plaintiff asserts no causes of action raising any federal question of law and has not in good faith alleged the jurisdictional amount required for diversity jurisdiction under 28 U.S.C. § 1332(a).
2. Under Fed. R. Civ. P. 12(b)(2), this Court lacks personal jurisdiction over Defendant because:
    a. Defendant is a New York limited liability company. It did not purposefully avail itself of this forum; rather, a third-party broker connected the California Debtors with DLP in New York to obtain financing. Defendant's alleged actions were undertaken according to their rights under the MSA. The MSA between Defendant and California Debtors contains a New York choice of law provision. Exercising jurisdiction over a New York defendant in a case

brought by an Iowa plaintiff regarding a dispute governed by New York law would be constitutionally unreasonable.

3. Under Fed. R. Civ. P. 12(b)(3), venue is improper in the Eastern District of California as no defendant resides here and the substantial part of the events did not occur here.

4. Alternatively, the action should be dismissed under the doctrine of *forum non conveniens.* The MSA at the heart of this dispute contains a mandatory forum selection clause designating New York as the proper forum for litigation.

This Motion will be based upon this Notice, the Motion to Dismiss, memorandum of points and authorities attached hereto, the Declaration of Levy Cohen, all documents and pleadings on file herein, and any additional material as may be submitted at the time of the hearing of this matter.

Dated: March 31, 2026

**LAW OFFICE OF ARYEH KAUFMAN**

By: *<u>/s/ Aryeh L. Kaufman</u>*
Aryeh L. Kaufman, Esq.
*Attorney for Defendant,*
**DLP FUNDING, LLC**

Table of Contents

I. INTRODUCTION .......... 10

II. STATEMENT OF FACTS .......... 11

A. Summary of Complaint .......... 11

B. Jurisdiction and Venue Allegations .......... 12

C. Defendant DLP Funding LLC is not subject to this Court's jurisdiction .......... 13

III. LEGAL STANDARDS .......... 14

A. Federal Rule of Civil Procedure 12(b)(1) .......... 14

B. Federal Rule of Civil Procedure 12(b)(2) .......... 14

C. Federal Rule of Civil Procedure 12(b)(3) .......... 15

D. *Forum Non Conveniens* .......... 15

IV. ARGUMENT .......... 16

A. Court Should Dismiss Complaint due to Lack of Subject Matter Jurisdiction .......... 16

1. Plaintiff fails to allege a concrete injury .......... 16

2. Plaintiff fails to allege the injury is fairly traceable to Defendant .......... 18

3. Plaintiff fails to allege redressability .......... 19

4. Without a concrete injury traceable to Defendant's conduct, the Complaint fails to allege the jurisdictional amount .......... 20

B. Court Should Dismiss Complaint due to Lack of Personal Jurisdiction .......... 20

1. Plaintiff does not allege general jurisdiction, and the exacting standard cannot be met .......... 21

2. Plaintiff cannot establish specific jurisdiction .......... 22

a. Plaintiff cannot establish purposeful direction by Defendant .......... 23

b. Plaintiff cannot establish its claims arise out of or relate to Defendant's forum-related activities……26

c. Exercise of personal jurisdiction over Defendant would be unreasonable……26

3. Court Should Dismiss Complaint Because Venue Is Improper…… 28

4. Court Should Dismiss Complaint under Doctrine of *Forum Non Conveniens*…… 28

V. CONCLUSION…… 29

## Table of Authorities

**Cases**

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ........ 18

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ........ 18

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ........ 32

*Advanced Skin & Hair, Inc. v. Bancroft*,
858 F. Supp. 2d 1084 (C.D.Cal. 2012) ........ 30

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986) ........ 19

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 2174 (1985) ........ 28

*Calder v. Jones*,
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) ........ 26

*Carijano v. Occidental Petroleum Corp.*
643 F.3d 1216 (9th Cir. 2011) ........ 32

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 17

*Color Switch LLC v. Fortafy Games DMCC*,
377 F. Supp. 3d 1075 (E.D. Cal. 2019) ........ 31

*Crum v. Circus Circus Enters.*
231 F.3d 1129 (9th Cir. 2000) ........ 23

*Daimler AG v. Bauman*,
571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ........ 17, 23, 24, 25

*Dale Tiffany, Inc. v. Meyda Stained Glass, LLC, No. 2:17-CV-00536-CAS(AGRx)*,
2017 U.S. Dist. LEXIS 163941, 2017 WL 4417585 (C.D. Cal. Oct. 2, 2017) ........ 28

*Data Disc, Inc. v. Systems Technology Associates, Inc.*,
557 F.2d 1280 (9th Cir. 1977) ........ 30

*Davis v. Cranfield Aerospace Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) ........ 26, 27, 28

*First Bank v. East West Bank (2011)*
199 Cal.App.4th 1309 ........ 21

*Fleites v. MindGeek S.A.R.L., No. 2:21-cv-04920-WLH-ADS*,
2025 WL 2902292, (C.D. Cal. Sept. 26, 2025) ........ 25

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351, 141 S. Ct. 1017 (2021) ........ 29

*Garlough v. FCA US LLC, No. 2:20-CV-01879-JAM-AC*,
2021 U.S. Dist. LEXIS 75018, 2021 WL 1534205 (E.D. Cal. Apr. 19, 2021) ........ 25

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ........ 18

*Gonzalez v. Consejo Nacional de Produccion de Costa Rica*,
614 F.2d 1247 (9th Cir. 1980) ........ 28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) ........ 24

*Great Lakes Props., Inc. v. El Segundo*,
19 Cal. 3d 152, 137 Cal. Rptr. 154 (Cal. 1977) ........ 21

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ........ 20, 21

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ........ 18

*Int'l Shoe Co. v. Washington*,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ........ 25

*Vivendi SA v. T-Mobile USA, Inc.*
586 F.3d 689 (9th Cir. 2009)........ 32

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ........ 19

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ........ 17

*LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ........ 24, 26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ........ 19

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) ........ 27

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ........ 22

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
802 F.2d 362 (9th Cir. 1986) ........ 23

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ........ 18

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979) ........ 18

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) ........ 17

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ........ 24

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022) ........ 25

*Republic Int'l Corp. v. Amco Eng'rs, Inc.*,
516 F.2d 161 (9th Cir. 1975) ........ 28

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) ........ 26

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 17

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........ 28

*Sinatra v. National Enquirer*,
854 F.2d 1191 (9th Cir. 1988) ........ 27

*Small v. Fritz Companies, Inc.*
30 Cal.4th 167 (Cal. 2003) ........ 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ........ 19, 21

*Tankovich v. Candela Med., Inc., No. 8:21-cv-01955-JWH-SHK*,
2022 U.S. Dist. LEXIS 194980, 2022 WL 17363909 (C.D. Cal. Oct. 24, 2022) ........ 28

*Theos Med. Sys. Inc. v. Nytone Med. Prods. Inc.*,
No. 19-cv-01092-VKD, 2020 U.S. Dist. LEXIS 16395, 2020 WL 500511 (N.D. Cal. Jan. 31, 2020) .. 28

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ........ 24

*Wit v. United Behavioral Health*,
79 F.4th 1068 (9th Cir. 2023) ........ 21

*Ziegler v. Indian River Cty.*,
64 F.3d 470 (9th Cir. 1995) .......... 30

**Statutes**

Cal. U. Comm. Code § 1202 .......... 21
CACI § 2100 .......... 22
CACI § 2201 .......... 22
28 U.S.C. § 1332 .......... 2, 15, 16, 23
28 U.S.C. § 1391 .......... 16, 17, 31
Code Civ. Proc. § 410.10 .......... 18

**Other**

Fed. R. Civ. Pro. Rule 12 .......... 1, 2, 3, 14, 15, 17, 18, 20, 31
Federal Rule of Evidence 201 .......... 29

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action arises from a dispute between two out-of-state lenders regarding competing claims over accounts receivable for a group of non-party agricultural entities (the "California Debtors"). Plaintiff Conterra Agricultural Capital, LLC ("Plaintiff" or "Conterra"), an Iowa-based entity, has sued Defendant DLP Funding, LLC ("Defendant" or "DLP"), a New York-based entity, in a forum where neither party resides and where Defendant maintains no physical or operational presence.

Defendant now moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, or, in the alternative, under the doctrine of *forum non conveniens*. Dismissal is required for several foundational reasons.

First, Plaintiff lacks Article III standing because it has failed to allege a concrete, non-speculative injury fairly traceable to DLP. The alleged withholding of funds is the result of prior breaches by the California Debtors and the independent choices of third-party retailers, such as Costco and Walmart. It is not the result of the conduct of Defendant. Further, Plaintiff has not in good faith alleged the jurisdictional amount required for diversity jurisdiction.

Second, Defendant is a New York limited liability company with no offices, bank accounts, or property in California. It did not purposefully avail itself of this forum; rather, a third-party broker connected the California Debtors with DLP in New York to obtain financing. Defendant's alleged actions were undertaken according to their rights under the Merchant and Security Agreement ("MSA") between Defendant and California Debtors. The MSA contains a New York choice of law provision. Exercising jurisdiction over a New York defendant in a case brought by an Iowa plaintiff regarding a dispute governed by New York law would be constitutionally unreasonable.

Finally, venue does not lie in the Eastern District of California, as no defendant resides here and the substantial part of the events did not occur here. Alternatively, the MSA at the heart of this dispute contains a mandatory forum selection clause designating New York as the proper forum for litigation.

Because of these jurisdictional and venue-related deficiencies, the Complaint should be dismissed in its entirety.

## II. STATEMENT OF FACTS

### A. Summary of Complaint

On January 8, 2026, Conterra Agricultural Capital, LLC filed this action against DLP Funding, LLC for conversion, intentional interference with contract, and unfair business practices. D.E. 1. ("Complaint") The dispute arises from competing claims over accounts receivable owed to a group of agricultural entities, including Hronis Ranch, LLC, Hronis Citrus, LLC, and Hronis, Inc., referred to hereinafter as "California Debtors." Complaint at ¶ 27 (identifying three of the DLP Borrowers are also Conterra Borrowers).

In October 2024, Conterra alleges it provided the California Debtors with an operating line of credit that was eventually extended to $85,850,000. *Id.* at ¶ 8. To secure this loan, the California Debtors allegedly granted Conterra a first-priority security interest in substantially all its personal property, including its accounts. Conterra alleges it perfected this interest by recording a UCC-1 Financing Statement on October 29, 2024. *Id.* at ¶ 13.

Following a default by the California Debtors, Conterra alleges a Chief Restructuring Officer ("CRO") was granted "full and sole responsibility" regarding any further borrowing by California Debtors. *Id.* at ¶¶ 16-19. Conterra further alleges the California Debtors were prohibited from entering into transactions outside the ordinary course of business without prior CRO approval and notifying Conterra. *Id.* at ¶ 20.

In November 2025, the California Debtors entered into a Merchant and Security Agreement ("MSA") with Defendant for approximately $13.4 million. *Id.* at ¶ 22; Ex. 4 thereto. This agreement assigned 19.25% of the borrowers' future receipts to DLP. *Id.* at ¶ 24. Further, in the event of a default, the California Debtors agreed that 100% of future receipts would transfer to DLP. *Id.*

Conterra alleges that the California Debtors did not seek or receive authorization to enter into the MSA with DLP, and hid the existence of this MSA from both the CRO and Conterra. *Id.* at ¶ 28.

After the California Debtors defaulted on the MSA, Plaintiff alleges that Defendant issued notices to certain account debtors, including Costco Wholesale and Walmart, Inc., indicating that DLP was the assignee of the accounts and demanding that all payments be sent directly to DLP. *Id.* at ¶ 31.

Plaintiff alleges a series of legal contentions that Defendant "had no right" to send these notices (*id.* at ¶ 32) because Conterra's lien took priority (*id.*); and Conterra's UCC Financing Statement provided Defendant with "constructive notice" thus making Defendant's actions to send the notices "intentionally wrongful" (*id.* at ¶ 33).

Plaintiff alleges that, upon receipt of Defendant's notices, Costco and Walmart have refused to release the funds owed to the Conterra Borrowers. *Id.* at ¶¶ 34-35. Costco and Walmart allegedly informed the California Debtors and Conterra that all funds will be held pending resolution of the dispute regarding payment. *Id.* at ¶ 37. Conterra alleges that Costco is holding $1,175,692.01 in funds owed to the Conterra Borrowers (the "Costco Withheld Funds"). *Id.* at ¶ 38. Conterra alleges that Walmart is holding approximately $4,700,000.00 of funds owed to the Conterra Borrowers (the "Walmart Withheld Funds"). *Id.* at ¶ 39. According to the Complaint, the Costco Withheld Funds and Walmart Withheld Funds were, pursuant to the Conterra Loan Agreement, scheduled to be paid to the U.S. Bank Account controlled by Conterra, and if made would have resulted in payment on the Conterra Loan Agreement. *Id.* at ¶ 40.

**B. Jurisdiction and Venue Allegations**

Plaintiff alleges this Court has subject matter jurisdiction based upon 28 U.S.C. § 1332. *Id.* at ¶ 1. Plaintiff alleges Conterra is a citizen of Iowa, while Defendant is a citizen of New York. *Id.* Plaintiff alleges "damages of at least $6,000,000 which exceeds the $75,000.00 threshold for diversity jurisdiction cases." *Id.*

Plaintiff alleges the Court has personal jurisdiction over DLP, "which availed itself of the laws of the State of California by providing lending services to businesses within the State and by taking the assignment of accounts owed within the state to businesses

within the State." *Id.* at ¶ 2. Further, "[t]his Court is the appropriate venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims occurred and continue to occur in this judicial district." *Id.* at ¶ 3.

**C. Defendant DLP Funding LLC is not subject to this Court's jurisdiction**

Defendant is a limited liability company formed under the laws of New York, with its principal place of business in New York. Declaration of Levy Cohen ["Cohen Decl."] at ¶¶ 2-3. DLP does not maintain any offices within the State of California. Cohen Decl. at ¶ 4. DLP's sole member is a resident of New York. *Id.* at ¶ 5.

DLP maintains no bank accounts or financial assets in California. *Id.* at ¶ 9. All financial records and books are kept in New York. *Id.* DLP does not own, lease, or possess any real or personal property in California. *Id.* at ¶ 10. DLP does not file tax returns in California. *Id.* at ¶ 11. DLP has no registered agent for service of process in California. *Id.* at ¶ 12. DLP does not have a telephone listing in California. *Id.* at ¶ 13. DLP does not have any sort of physical presence in California. *Id.* at ¶ 14. DLP does not target California residents through specific advertising or marketing campaigns. *Id.* at ¶ 15.

DLP has only one independent contractor, an administrative assistant, located in California. *Id.* at ¶ 8. This independent contractor did not deal with the California Debtors in connection with the MSA. *Id.*

Non-party California Debtors sought the alleged funding, and the transaction was presented to Defendant by a third-party broker. *Id.* at ¶ 16. No employees, members, or agents of DLP traveled to California to negotiate, meet with, or do business with California residents in connection with activity alleged in the Complaint. *Id.* at ¶¶ 17-18. At the time of execution of the MSA with California Debtors, all of Defendant's operations were based in New York, and remain so to this date. *Id.* at ¶ 7.

The MSA between DLP and non-party California Debtors provides that the agreement is to be construed under the laws of New York and any disputes regarding same are to be brought in the courts of New York. *Id.* at ¶ 19; Complaint at Ex. 4, II.5.

DLP's operations, records, witnesses, and evidence are located outside of California, in New York. *Id.* at ¶ 20. The most efficient judicial resolution of this dispute will not take place in California. *Id.*

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of standing is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Such a motion can be facial or factual in nature. *Pride v. Correa*, 719 F.3d 1130, 1139 (9th Cir. 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler*, 598 F.3d at 1122.

### B. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, our inquiry centers on whether exercising jurisdiction comports with

[constitutional] due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal quotation marks and citation omitted); *see* Cal. Code Civ. Proc. § 410.10.)

"Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 801). "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. Alternatively, a court may exercise jurisdiction over 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).

Under Rule 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).

**C. Federal Rule of Civil Procedure 12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss a complaint for improper venue. In considering a motion to dismiss under Rule 12(b)(3), a court need not accept the allegations in the pleadings as true and may consider facts outside the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

Plaintiff bears the burden of demonstrating venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). "If the court finds that the case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (quoting 28 U.S.C. § 1406(a)).

**D. *Forum Non Conveniens***

"To grant a motion to dismiss on *forum non conveniens* grounds, a district court must determine '(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal.'"

## IV. ARGUMENT

### A. Court Should Dismiss Complaint due to Lack of Subject Matter Jurisdiction

To establish standing to sue in a federal court, a plaintiff must demonstrate the "irreducible constitutional minimum" of: (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation— that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal citations and quotations omitted).

At the pleadings stage, the plaintiff must "allege sufficient facts that, taken as true, demonstrate each element of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (cleaned up). In the absence of standing, there is no subject matter jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546-47, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986).

In this case, the allegations of Plaintiff's Complaint are insufficient on their face to invoke federal jurisdiction. Plaintiff fails to allege a concrete injury; fails to allege the injury is fairly traceable to Defendant; and fails to allege redressability. The Complaint should therefore be dismissed.

#### 1. Plaintiff fails to allege a concrete injury

"[I]njury in fact, [is] the first and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (internal quotation and citation omitted). An injury must be "concrete." *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.*

Here, Plaintiff has not alleged a concrete injury. Plaintiff alleges: "Costco and Walmart have informed counsel for Hronis Farms and Conterra that all funds will be held pending resolution of the dispute regarding payment. [¶] Conterra is informed that Costco is holding $1,175,692.01 in funds owed to the Conterra Borrowers (the "Costco Withheld Funds"). [¶] Conterra is informed that Walmart is holding approximately $4,700,000.00 of funds owed to the Conterra Borrowers (the "Walmart Withheld Funds"). [¶] The Costco Withheld Funds and Walmart Withheld Funds were, pursuant to the Conterra Loan Agreement, scheduled to be paid to the U.S. Bank Account controlled by Conterra, and if made would have resulted in payment on the Conterra Loan Agreement." Complaint at ¶¶ 37-40.

However, there are no causes of action in the Complaint for a judicial determination of the validity of Plaintiff's and Defendant's competing liens. Instead, Plaintiff takes for granted its priority lien. *See* Complaint at ¶¶ 32, 48, 58, 68.

Plaintiff's entire theory of its case depends on legal assumptions. Yet, on a Rule 12(b)(1) motion, a court does not accept the truth of "conclusory allegations" or "conclusory legal assertions." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (internal quotations omitted).

Based on these legal assumptions, Plaintiff alleges: "Conterra has been damaged in an amount not less than $6,000,000, constituting the withheld and/or misdirected funds that were scheduled to be used for payment on the Conterra Loan Agreement, and from its loss of the use of funds." Complaint at ¶¶ 54, 64.

However, it was the California Debtors who breached the Conterra Loan Agreement. And third-parties Costco and Walmart are withholding the funds.

Plaintiff is hedging its recovery by trying to make a case against Defendant for other parties' actions. Not only is the alleged injury caused by Debtors and other third parties, which is discussed below, but Plaintiff's claimed deprivation is speculative. These third parties could change course tomorrow, irrespective of anything Defendant does or does not do. The funds could be released by Costco and Walmart and Plaintiff's alleged "damages" would never materialize.

The alleged injury therefore is not fixed, but tentative or speculative. It is abstract and fails the test for injury-in-fact. *Spokeo*, 578 U.S. at 340.

Because Plaintiff cannot show injury-in-fact, it has not established Article III standing.

**2. Plaintiff fails to allege the injury is fairly traceable to Defendant**

"An injury is 'fairly traceable' where there is a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behavioral Health*, 79 F.4th 1068, 1083 (9th Cir. 2023) (citing *Lujan*, 504 U.S. at 560).

Here, the challenged conduct is that "as the Financing Statement was recorded October 29, 2024, DLP had, at a minimum, constructive notice of the existence of Conterra's lien in the accounts of the Conterra Borrowers. DLP's acts to redirect those accounts to DLP were intentionally wrongful." Complaint, at ¶ 33.

First, as set forth above, although a reviewing court accepts the complaint's factual allegations, it does not accept "conclusory allegations" or "conclusory legal assertions." *Holden*, 978 F.2d at 1121. In this case, Plaintiff's theory of standing depends on conclusory legal assertions, which are not taken as true.

Plaintiff's legal conclusions are also incorrect. The filing of a UCC financing statement merely provides constructive notice to third parties. *See First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1314 (A person is presumed to have constructive knowledge or notice of any facts contained in documents "'recorded as prescribed by law.'") Constructive notice does not equate to actual knowledge. *See* Cal. U. Com. § 1202 (defining and differentiating "notice" and "knowledge"). When a statute prescribes the meaning to be given to particular terms used by it, as the Commercial Code does with "notice" and "knowledge"; "that meaning is generally binding on the courts." *Great Lakes Props., Inc. v. El Segundo*, 19 Cal. 3d 152, 156, 137 Cal. Rptr. 154, 156 (Cal. 1977) (citation omitted).

The allegation that Plaintiff filed a UCC financing statement is therefore not sufficient to allege Defendant's knowledge or intent, which are required elements for each of the three causes of action in the Complaint. *See Small v. Fritz Companies, Inc.* 30 Cal.4th 167, 173-174 (Cal. 2003) (tort action for deceit requires knowledge of falsity (or "scienter") and intent to defraud);

*see* CACI § 2201(elements of a claim for intentional interference with contractual relations include, inter alia: the defendant *knew of* the contract and *intended* to disrupt performance of the contract); CACI § 2100 (elements of a claim of conversion include, inter alia: the defendant substantially interfered with plaintiff's property by *knowingly or intentionally* preventing plaintiff from having access to the property).

As a matter of law, Plaintiff does not, and cannot, allege facts to establish a causal connection between the alleged injury and Defendant's challenged conduct in sending the notices.

Rather, it is apparent on the face of the Complaint that Plaintiff is trying to attribute its injury to Defendant instead of the actual wrongdoers. Plaintiff alleges the MSA assigned 19.25% of the borrowers' future receipts to DLP; and, in the event of a default, the California Debtors agreed that 100% of future receipts would transfer to DLP. Complaint at ¶ 24. Defendant therefore sent the alleged notices according to its rights under the MSA.

To the extent Plaintiff has been injured, the fault lies with the California Debtors who sought out and executed the MSA with Defendant.

Indeed, Plaintiff alleges: "Due to the Conterra Borrowers' continued breach of their obligations under the Conterra Loan Agreement, including the entering into the MSA in violation of the June Letter Agreement, on December 4, 2025, Conterra brought suit in the Superior Court of California, County of Kern against the Hronis Borrowers and others to collect on its debt (the "Collection Action")." Complaint at ¶ 45.

Because Plaintiff cannot show the alleged injury is fairly traceable to Defendant's challenged conduct, it has not established Article III standing.

**3. Plaintiff fails to allege redressability**

There is no redressability if, following a favorable decision, redress of the injury "would still depend on the unfettered choices made by independent actors not before the courts." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989)).

Here, Plaintiff's allegations of injury are based entirely on the actions of third parties. Namely, the California Debtors, who violated their agreements with Plaintiff; and Walmart and Costco, who are withholding funds. *See* Complaint at ¶¶ 54, 64. The alleged $6 million in funds are in the possession of independent actors not before the Court. Redress of the alleged injury depends entirely on these non-parties, not Defendant.

Because Plaintiff cannot show redressability, it has not established Article III standing.

**4. Without a concrete injury traceable to Defendant's conduct, the Complaint fails to allege the jurisdictional amount**

Finally, Plaintiff asserts exclusively state law claims against Defendant. Plaintiff is using the speculative $6 million figure to allege the jurisdictional amount to bring its state law claims in federal court. Complaint at ¶ 1.

District courts have jurisdiction in civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Generally, the amount in controversy is determined from the face of the pleadings. *See Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). "The sum claimed by the plaintiff controls so long as the claim is made in good faith." *Crum v. Circus Circus Enters.* 231 F.3d 1129, 1131 (9th Cir. 2000).

Here, Plaintiff's alleged $6 million in damages arise from the conduct of non-parties. Plaintiff has not in good faith alleged its damages arising from Defendant's conduct. Without a concrete injury ascribable to Defendant's alleged wrongs, this case fails the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a).

For the foregoing reasons, Defendant respectfully requests the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

**B. Court Should Dismiss Complaint due to Lack of Personal Jurisdiction**

A court may exercise jurisdiction over a defendant LLC if it has either (A) general jurisdiction or (B) specific jurisdiction over that defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). General jurisdiction exists when the defendant is domiciled in the forum state or has contacts with the forum state that are so

"continuous and systematic" as to render the defendant essentially "at home" in that forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). Specific jurisdiction exists when a suit arises out of or relates to the defendant's contacts with the forum. *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).

**1. Plaintiff does not allege general jurisdiction, and the exacting standard cannot be met**

"Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)).

Here, Plaintiff does not allege general jurisdiction and cannot meet the standard regardless. Defendant is a limited liability company formed under the laws of New York, with its principal place of business in New York. DLP maintains no bank accounts or financial assets in California. All financial records and books are kept in New York. DLP does not own, lease, or possess any real or personal property in California. DLP does not file tax returns in California. DLP has no registered agent for service of process in California. DLP does not have a telephone listing in California. DLP does not have any sort of physical presence in California. DLP does not target California residents through specific advertising or marketing campaigns.

DLP has only one independent contractor, an administrative assistant, located in California. However, the existence of an independent contractor relationship, without more, does not demonstrate that the Defendant is "essentially at home in [California]." *LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022); *see also Daimler*, 571 U.S at 136 (rejecting the exercise of general jurisdiction based on the presence of an independent contractor).

With respect to the MSA between Defendant and California Debtors, the fact that Defendant occasionally conducts business with California entities does not confer general

jurisdiction. "[D]oing business in the State is not enough to justify general jurisdiction[.]" *Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 U.S. Dist. LEXIS 75018, 2021 WL 1534205, at *9 (E.D. Cal. Apr. 19, 2021) (finding no general jurisdiction despite defendant's 45 dealerships in California, permanent workforce in the State, license to do business here, payment of taxes, and advertising in California).

Finally, DLP's only member, Levy Cohen is a bona fide resident of the State of New York. While Mr. Cohen lived in California five years ago, "[i]n the Ninth Circuit, we measure the extent of a defendant's contacts with a forum 'at the time of the events underlying the dispute.'" *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022), *superseded by statute on other grounds as recognized in Fleites v. MindGeek S.A.R.L.*, No. 2:21-cv-04920-WLH-ADS, 2025 WL 2902292, (C.D. Cal. Sept. 26, 2025).

At the time of execution of the MSA with California Debtors, all of Defendant's operations, and its member, were based in New York and remain so to this date.

**2. Plaintiff cannot establish specific jurisdiction**

According to the allegations of Plaintiff's Complaint: "The Court has personal jurisdiction over DLP, which availed itself of the laws of the State of California by providing lending services to businesses within the State and by taking the assignment of accounts owed within the state to businesses within the State." Complaint at ¶ 2.

The Court's jurisdiction over Defendant is seemingly alleged to be specific jurisdiction. To establish that a defendant is subject to a court's specific jurisdiction, the plaintiff must show that the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *See Daimler*, 571 U.S. at 127; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). When evaluating whether a defendant has adequate contacts to support specific jurisdiction, courts in this circuit apply a three-part test: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or

relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161-62 (9th Cir. 2023).

"The plaintiff bears the burden of meeting the first two prongs while the defendant shoulders the burden on the final prong." *Id.* "All three prongs must be satisfied to assert personal jurisdiction, but the first two prongs have a unique relationship to one another. '[T]his court has stated that in its consideration of the first two prongs, '[a] strong showing on one axis will permit a lesser showing on the other.'" *LNS Enters.*, 22 F.4th at 859 (citations omitted).

**a. Plaintiff cannot establish purposeful direction by Defendant**

Plaintiff alleges tort claims against Defendant. The "purposeful direction" test typically applies to tort claims while the "purposeful availment" test typically applies to contract cases, but the distinction is not a "hard-and-fast rule." *Davis*, 71 F.4th at 1162. "[B]oth purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (citation omitted). "This analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections." *Id*. at 1163.

The purposeful direction test considers the "effects" of the defendant's acts, as set forth in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Under the *Calder* effects test, the defendant must have committed an intentional act, expressly aimed at the forum state, causing harm the defendant knows is likely to be suffered in the forum state. *Id.*

Here, Plaintiff alleges Defendant sent notices to Costco and Walmart. *See* Complaint at ¶ 31. At the outset, there are no allegations that these notices were sent to addresses in California.

In any event, the Ninth Circuit and California state courts have found that "ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (citations omitted).

Moreover, Defendant sent these alleged notices according to its rights under the MSA. "[R]emote actions taken to service a contract in the forum state seldom lead to purposeful availment by themselves." *Davis*, 71 F.4th at 1165.

Plaintiff's theory underlying its tort claims is that Defendant "knew" of Plaintiff's alleged priority lien because Plaintiff filed a UCC financing statement. However, as explained above, this is incorrect as a matter of law. Even if constructive notice of the lien could be imputed to Defendant, this is insufficient to allege that Defendant "knew" that harm was likely to occur in California by sending notices of Defendant's rights under the MSA. In fact, there are no allegations in the Complaint that injury occurred in California. "Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017).

Additionally, the court must evaluate whether "the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff[.]" *Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988).

In this case, Plaintiff is not even a resident of this forum state. Plaintiff is a limited liability company formed in Iowa, with its principal place of business in Iowa.

The only connection to California and this District are non-party California Debtors allegedly based in Kern County. Plaintiff's allegations of jurisdiction rely on the acts of these California Debtors who sought out additional financing and entered into the MSA with Defendant. Complaint at ¶ 22.

However, Defendant did not purposefully direct this activity. There are no allegations that Defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra*, 854 F.2d at 1195. Plaintiff's allegations do not suggest that Defendant initiated negotiations in California or otherwise sought to purposefully avail itself of the benefits of doing business in the forum.

In *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, the Ninth Circuit held that "nothing in the contract negotiation reflects [defendant's] intent to avail itself of [forum state's] laws" when the defendant "did not solicit the business" and instead "[plaintiff] initiated contact

with [defendant] by phone and email." *Id.* at 1164; *see also Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) (finding no purposeful availment in the course of negotiations when defendant "is solicited in its home state and takes no affirmative action to promote business within the forum state").

Likewise, here, non-party California Debtors sought funding, and the transaction was presented to Defendant by a third-party broker. No employees, members, or agents of DLP traveled to California to negotiate, meet with, or do business with California residents in connection with activity alleged in the Complaint. The MSA, which the non-party California Debtors executed, provides that the agreement is to be construed under the laws of New York and any disputes regarding same are to be brought in the courts of New York. Complaint, Ex. 4, at II.5.

Plaintiff's allegations of actions by third parties cannot be the basis of personal jurisdiction over Defendant. *See Second Dismissal Order* 9; *Theos Med. Sys. Inc. v. Nytone Med. Prods. Inc.*, No. 19-cv-01092-VKD, 2020 U.S. Dist. LEXIS 16395, 2020 WL 500511, at *4 (N.D. Cal. Jan. 31, 2020) ("Personal jurisdiction cannot be established based on conduct of the plaintiff or of third parties within the forum state.") (citing *Walden*, 571 U.S. at 284); *Dale Tiffany, Inc. v. Meyda Stained Glass, LLC*, No. 2:17-CV-00536-CAS(AGRx), 2017 U.S. Dist. LEXIS 163941, 2017 WL 4417585, at *7 (C.D. Cal. Oct. 2, 2017) (finding no purposeful direction where plaintiff relied on activities of third-party sellers); *Tankovich v. Candela Med., Inc.*, No. 8:21-cv-01955-JWH-SHK, 2022 U.S. Dist. LEXIS 194980, 2022 WL 17363909, at *3 (C.D. Cal. Oct. 24, 2022) (similar).

Further, it is well-settled that the existence of a contract with a forum resident cannot, standing alone, establish sufficient minimum contacts in the other party's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985); *see also Gonzalez v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1253 (9th Cir. 1980) ("It is not sufficient [as a basis for jurisdiction] that the plaintiff is a California resident, or that an act outside California imposes an economic burden on a California resident"); *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161 (9th Cir. 1975) ("[A plaintiff's contract]

performance in California cannot give jurisdiction over … [defendant]; it is [defendant's] activity that must provide the basis for jurisdiction").

Therefore, Plaintiff cannot establish the first prong, and the Court cannot exercise personal jurisdiction over Defendant.

**b. Plaintiff cannot establish its claims arise out of or relate to Defendant's forum-related activities**

Plaintiff fails the second prong of the test for specific jurisdiction and cannot establish that its claims arise out of or relate to Defendant's alleged forum-related activities. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 141 S. Ct. 1017 (2021).

Plaintiff has not adequately alleged that Defendant had contacts with California and, even if Defendant had sufficient contacts with California, Plaintiff's claims do not arise out of those activities. There are no allegations of Defendant's forum related activities other than entering into the MSA with California Debtors, after the transaction was presented to Defendant by a third-party broker. Yet, it was the California Debtors who sought out additional financing from the MSA with Defendant. The MSA contains a choice of law provision of New York.

There are no allegations that the Costco Withheld Funds and Walmart Withheld Funds exist in this state or district such that Defendant could allegedly interfere with Plaintiff's rights to those funds in this state or district. Costco and Walmart are global corporations with headquarters outside of the state of California, in Washington and Arkansas, respectively.[1] Plaintiff's alleged account into which the Withheld Funds were supposed to be deposited is with U.S. Bank (Complaint at ¶ 47), which is one of the largest nationwide banks, and headquartered in Minneapolis.

The claims therefore do not arise out of activity Defendant undertook in this forum state.

**c. Exercise of personal jurisdiction over Defendant would be unreasonable**

[1] Under Federal Rule of Evidence 201, judicial notice may be taken of adjudicative facts that are "not subject to reasonable dispute" because they are either "(1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned."

The Ninth Circuit weighs the following factors in evaluating the reasonableness of exercising jurisdiction: (1) the extent of the defendant's purposeful injection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995). The burden is on the defendant to make a compelling case that the exercise of jurisdiction would be unreasonable. *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1089 (C.D.Cal. 2012) .

In this case, Plaintiff asserts only state law tort claims. "[I]t may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside of the forum state, having only an effect within the state, [or] if the act is negligent rather than purposeful." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977).

Here, Plaintiff is trying to hale Defendant into a jurisdiction where no party resides. Plaintiff has not alleged that any injury occurred to Plaintiff in this state. Litigating in this jurisdiction is not only prejudicial to Defendant, but also imposes a burden on the Court.

To the extent Defendant has any connection to California, it is the result of the California Debtors. However, Defendant negotiated for, and the California Debtors agreed to, a forum selection clause in the MSA. Defendant sent the alleged notices according to its rights under the MSA. As such, New York has the primary interest in adjudicating this dispute.

The most efficient judicial resolution of this dispute will not take place in California. Defendant's principal place of business is in New York. Its documents and witnesses are located there. Plaintiff's principal place of business is Iowa. Presumably, all parties will have to travel significant distances for depositions and trial.

Plaintiff selected this forum according to its own whims, and the convenience of its attorneys who are litigating in Kern County against the non-party California Debtors. *See* Complaint at ¶ 45; Ex. 8 (showing Miller Nash LLP filed state court suit).

The exercise of jurisdiction in these circumstances does not comport with fair play and substantial justice.

### 3. Court Should Dismiss Complaint Because Venue Is Improper

As further grounds for dismissal of Plaintiff's Complaint, venue is not proper in this judicial district. Venue is generally governed by 28 U.S.C. § 1391. Under subsection (b), venue exists in: (1) a judicial district in which any defendant resides if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) any judicial district in which any defendant is subject to the Court's personal jurisdiction if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

In this case, Defendant does not reside here. Neither, for that matter, does Plaintiff.

Plaintiff makes the bare allegation: "This Court is the appropriate venue for this action pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims occurred and continue to occur in this judicial district." Complaint at ¶ 3.

However, "a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019). Plaintiff has not alleged any facts to support its assertion of venue in the Eastern District. As explained above, Plaintiff has not alleged that any injury occurred to Plaintiff in this judicial district. The case should therefore be dismissed.

Plaintiff selected this venue for its own convenience. However, Defendant's principal place of business is in New York. Its documents and witnesses are located there. The MSA was executed under the laws of New York. In the interests of justice, the case should be dismissed.

### 4. Court Should Dismiss Complaint under Doctrine of *Forum Non Conveniens*

To the extent the Court finds Plaintiff has sufficiently established subject matter and personal jurisdiction over Defendant, venue is improper under the doctrine of *forum non conveniens*. "Historically, the doctrine's purpose is to root out cases in which the 'open door' of broad jurisdiction and venue laws 'may admit those who seek not simply justice but perhaps

justice blended with some harassment,' and particularly cases in which a plaintiff resorts 'to a strategy of forcing the trial at a most inconvenient place for an adversary.'" (*Carijano v. Occidental Petroleum Corp.* 643 F.3d 1216, 1224 (9th Cir. 2011) (citation omitted).

In considering a motion to dismiss under the doctrine of *forum non-conveniens*, the private-interest factors include: "the ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; other problems that interfere with an expeditious trial . . . ; and the ability to enforce the judgment." *Vivendi SA v. T-Mobile USA, Inc*, 586 F.3d 689, 695.

Where there is a valid forum-selection clause between the parties, the private-interest factors "weigh entirely in favor of the preselected forum." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

Here, the MSA between the California Debtors and Defendant contains a forum selection clause at II.5, designating "any court sitting in New York" as acceptable forums, with the MSA to be construed under the laws of New York.

As for the public-interest factors, the Court must consider: "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; [and] (4) . . . the avoidance of unnecessary problems in conflicts of law." *Vivendi*, *supra*, 586 F.3d at 695.

In this case, while the dispute arises from agreements entered into by California Debtors, Plaintiff has not joined them as parties. This action is therefore not a localized controversy. It is a dispute between two out-of-state lenders. The Court should not be congested with cases where no party has a connection to the Eastern District, especially where the Defendant negotiated and executed a forum selection clause with the only Californians implicated in the dispute.

The Court should therefore dismiss the case because courts of New York are an adequate alternative forum.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint in its entirety.

Dated: March 31, 2026

**LAW OFFICE OF ARYEH KAUFMAN**

By: */s/ Aryeh L. Kaufman*
Aryeh L. Kaufman, Esq.
*Attorney for Defendant,*
**DLP FUNDING, LLC**

Aryeh Kaufman, Esq. (SBN: 289745)
aryeh@akaufmanlegal.com
**LAW OFFICE OF ARYEH KAUFMAN**
5482 Wilshire Blvd., PMB 1907
Los Angeles, CA 90036
Tel: (323) 943-2566
Fax: (213) 402-8598

*Attorneys for Defendant*
**DLP FUNDING, LLC**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONTERRA AGRICULTURAL CAPITAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DLP FUNDING, LLC,<br><br>Defendants. | Case No. 1:26-CV-00122-CDB<br><br>Hon. Christopher D. Baker<br><br>**DECLARATION OF LEVY COHEN IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. RULES 12(b)(1), 12(b)(2), 12(b)(3), AND *FORUM NON COVENIENS***<br><br>Hearing Date: May 6, 2026<br>Time: 10:30 a.m.<br><br>Trial Date: None Set<br>Action Filed: January 8, 2026 |

**DECLARATION OF LEVY COHEN**

I, Levy Cohen, declare as follows:

1. I am the sole member of Defendant DLP FUNDING, LLC ("Defendant" or "DLP"). I am over the age of 18 and competent to make this Declaration. The information set forth in this Declaration is based on my personal knowledge and a review of the records and documents that DLP maintains in the regular course of business. If called as a witness, I could and would testify competently thereto.

2. DLP is a limited liability company organized and existing under the laws of the State of New York. Its Articles of Organization were filed with the New York Secretary of State on or about January 11, 2021.

3. DLP's principal place of business is located at DLP Funding LLC, 447 Broadway, 2nd Fl Suite 805, New York, NY 10013.

4. DLP does not maintain any offices within the State of California.

5. I am the only member of DLP and a bona fide resident of the State of New York. I maintain my primary residence in New York and file tax returns in New York.

6. I lived in California prior to becoming a member of DLP, but I have not maintained a residence in California since 2021.

7. At the time of execution of the Merchant and Security Agreement ("MSA") with certain agricultural entities, including Hronis Ranch, LLC, Hronis Citrus, LLC, and Hronis, Inc., referred to hereinafter as "California Debtors", in or about November 2025, all of Defendant's operations were based in New York and remain so to this date.

8. DLP has only one independent contractor, an administrative assistant, located in California. She did not deal with the California Debtors in connection with the MSA.

9. DLP maintains no bank accounts or financial assets in California. All financial records and books are kept in New York.

10. DLP does not own, lease, or possess any real or personal property in California.

11. DLP does not file tax returns in California.

12. DLP has no registered agent for service of process in California.

13. DLP does not have a telephone listing in California.

14. DLP does not have any sort of physical presence in California.

15. DLP does not target California residents through specific advertising or marketing campaigns.

16. The claims asserted in this action do not arise out of any activities conducted by DLP within California. Non-party California Debtors sought the alleged funding, and the transaction was presented to Defendant by a third-party broker.

17. I never traveled to California to negotiate any transactions with California residents in connection with the MSA.

18. No other employees or agents of DLP traveled to California to negotiate, meet with, or do business with California residents in connection with the alleged activity in the Complaint.

19. The MSA between DLP and non-party California Debtors provides that the agreement is to be construed under the laws of New York and any disputes regarding same are to be brought in the courts of New York. A copy of the MSA is attached to Plaintiff's Complaint [D.E. 1] as Exhibit 4.

20. DLP's operations, records, witnesses, and evidence are located outside of California, in New York. The most efficient judicial resolution of this dispute will not take place in California.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed March 31, 2026, in New York, NY.

By: ______________________________
Levy Cohen, Declarant

## Gonzalez, Sheila

| | |
|---|---|
| **From:** | Gonzalez, Sheila |
| **Sent:** | Wednesday, April 1, 2026 9:30 AM |
| **To:** | Morrison, Brianna |
| **Cc:** | Kornberg, Bernie; McLaughlin, Nicole M.; Gonzalez, Sheila |
| **Subject:** | FW: Activity in Case 1:26-cv-00122-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Minute Order. |

FYI -

**Sheila W. Gonzalez**
Energy & Shipping Department Coordinator | Legal Assistant to: Julianne Avery, Tyler Bowlin, and Nicole McLaughlin

**Miller Nash LLP**
340 Golden Shore, Ste 450 | Long Beach, CA 90802
*Direct*: 562.247.7636 | *Office*: 562.435.8002
**Email | Insights | Website**

*Our attorneys regularly offer insights to address the challenges faced by our clients. To visit the Miller Nash industry-focused blog overview page on our updated website: please click this link.*

---------------------------------------
**CONFIDENTIALITY NOTICE:** This email message may contain confidential or privileged information. If you have received this message by mistake, please do not review, disclose, copy, or distribute the email. Instead, please notify us immediately by replying to this message or telephoning us. Thank you.
---------------------------------------

**From:** caed_cmecf_helpdesk@caed.uscourts.gov <caed_cmecf_helpdesk@caed.uscourts.gov>
**Sent:** Wednesday, April 1, 2026 9:16 AM
**To:** CourtMail@caed.uscourts.dcn
**Subject:** Activity in Case 1:26-cv-00122-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Minute Order.

**[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

**Notice of Electronic Filing**

The following transaction was entered on 4/1/2026 at 9:16 AM PDT and filed on 4/1/2026

**Case Name:** Conterra Agricultural Capital, LLC v. DLP Funding, LLC
**Case Number:** 1:26-cv-00122-CDB
**Filer:**
**Document Number:** 9(No document attached)

**Docket Text:**
**MINUTE ORDER signed by Magistrate Judge Christopher D. Baker on 04/01/2026: One or more parties has not completed and returned the "Consent to Assignment or Request for Reassignment" form included with the case opening documents. See (Doc. 3 at 5) ("all parties must file completed consent/decline forms no later than the date for filing the Joint Scheduling Report" (i.e., one week in advance of the originally set Scheduling Conference)); see also (Doc. 3-1) (" The parties are strongly encouraged to submit their consent forms before the filing of any motion, so the motion can be noticed before the proper judge."). Accordingly, no later than 4/6/2026, the parties are HEREBY ORDERED to complete and file the "Consent to Assignment or Request for Reassignment" forms (see Doc. 3-3). (Deputy Clerk CRB)**

**1:26-cv-00122-CDB Notice has been electronically mailed to:**

Aryeh L. Kaufman aryeh@akaufmanlegal.com

Bernard Jaron Kornberg bernie.kornberg@millernash.com

Nicole Marie McLaughlin nicole.mclaughlin@millernash.com, lbfiling@millernash.com, sheila.gonzalez@millernash.com

**1:26-cv-00122-CDB Electronically filed documents must be served conventionally by the filer to:**

**Gonzalez, Sheila**

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **Sent:** | Wednesday, April 1, 2026 11:23 AM |
| **To:** | CourtMail@caed.uscourts.dcn |
| **Subject:** | Activity in Case 1:26-cv-00122-JLT-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Clerk's Notice Reassigning Case. |

**[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

## Notice of Electronic Filing

The following transaction was entered on 4/1/2026 at 11:22 AM PDT and filed on 4/1/2026

| | |
|---|---|
| **Case Name:** | Conterra Agricultural Capital, LLC v. DLP Funding, LLC |
| **Case Number:** | 1:26-cv-00122-JLT-CDB |
| **Filer:** | |
| **Document Number:** | 10(No document attached) |

**Docket Text:**
**CLERK'S NOTICE REASSIGNING CASE (TEXT ONLY). This case has been assigned to District Judge Jennifer L. Thurston and Magistrate Judge Christopher D. Baker. *The new case number is: 1:26-cv-00122-JLT-CDB.* (Deputy Clerk CM)**

**1:26-cv-00122-JLT-CDB Notice has been electronically mailed to:**

Aryeh L. Kaufman aryeh@akaufmanlegal.com

Bernard Jaron Kornberg bernie.kornberg@millernash.com

Nicole Marie McLaughlin nicole.mclaughlin@millernash.com, lbfiling@millernash.com, sheila.gonzalez@millernash.com

**1:26-cv-00122-JLT-CDB Electronically filed documents must be served conventionally by the filer to:**

## Gonzalez, Sheila

**From:** caed_cmecf_helpdesk@caed.uscourts.gov
**Sent:** Thursday, April 2, 2026 9:26 AM
**To:** CourtMail@caed.uscourts.dcn
**Subject:** Activity in Case 1:26-cv-00122-JLT-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Minute Order.

**[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

### Notice of Electronic Filing

The following transaction was entered on 4/2/2026 at 9:26 AM PDT and filed on 4/2/2026
**Case Name:** Conterra Agricultural Capital, LLC v. DLP Funding, LLC
**Case Number:** 1:26-cv-00122-JLT-CDB
**Filer:**
**Document Number:** 11(No document attached)

**Docket Text:**
**MINUTE ORDER signed by Magistrate Judge Christopher D. Baker on 04/02/2026: In light of the assignment of a presiding district judge to this action, the hearing on Defendant's motion to dismiss, noticed on 5/6/2026 before the undersigned (see Doc. 8), is HEREBY VACATED. Cf. E.D. Cal. L.R. 301 with E.D. Cal. L.R. 302(c); see 28 U.S.C. 636. (Deputy Clerk CRB)**

**1:26-cv-00122-JLT-CDB Notice has been electronically mailed to:**

Aryeh L. Kaufman aryeh@akaufmanlegal.com

Bernard Jaron Kornberg bernie.kornberg@millernash.com

Nicole Marie McLaughlin nicole.mclaughlin@millernash.com, lbfiling@millernash.com,

sheila.gonzalez@millernash.com

**1:26-cv-00122-JLT-CDB Electronically filed documents must be served conventionally by the filer to:**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**CONTERRA AGRICULTURAL CAPITAL, LLC ,**

Plaintiff(s),

v.

**DLP FUNDING, LLC ,**

Defendant(s).

Case No.: **1:26−CV−00122−JLT−CDB**

**STANDING ORDER**

**1. <u>LAW AND MOTION</u>**

**A. <u>Calendar</u>**

Civil motions may be set any day at 9:00 a.m. in Courtroom 4, located on the seventh floor. It is not necessary to clear a date prior to scheduling a civil motion. The parties are required to comply with Local Rule 230 and all other applicable rules and notice requirements.

Due to the ongoing lack of judicial resources and until further notice, the parties should expect that all civil motions will be submitted for decision on the papers without oral argument. The parties are required to comply with Local Rule 230, or other applicable rules and notice requirements with respect to motions. There may be occasions where the court will keep a motion hearing on calendar or re-set that motion for oral argument. In those cases, the court will so inform the parties by minute order and will at that time provide logistical information.

/////

In addition to the motions already assigned to magistrate judges by Local Rule 302(c), the following motions shall be noticed for hearing before the assigned magistrate judge[1]:

1. Motions seeking the appointment of a guardian ad litem.

2. Motions for class certification and decertification pursuant to Federal Rule of Civil Procedure 23.

3. Motions to approve minors' compromises.

The court will likely refer other motions to the assigned magistrate judge for the issuance of findings and recommendations by separate orders in particular cases.

**B. Briefing**

Unless leave of Court is granted in advance, no moving or opposing briefs or legal memoranda in civil cases, shall exceed 25 pages[2]. Reply briefs may not exceed 10 pages. Only for good cause shown will the court grant an application to extend these page limitations. Briefs that exceed the page limitations or are sought to be filed without leave of court may not be considered. Finally, no supplemental briefs may be filed without prior leave of court.

**C. Meet and Confer Requirement**

Before filing a motion in a case in which the parties are represented by counsel, counsel shall engage in a pre-filing meet and confer to discuss thoroughly the substance of the contemplated motion and any potential resolution. Counsel should resolve minor procedural or other non-substantive matters during the meet and confer process so that briefing on motions that proceed to hearing are directed only to those substantive issues requiring resolution by the court. **In the notice of motion, counsel for the moving party shall certify that meet and confer efforts have been exhausted and include a summary of meet and confer efforts.**

**2. COURTESY COPIES**

The parties are asked not to provide courtesy copies of any filed documents unless the Court specifically requests them.

/////

[1] Magistrate judges may resolve motions seeking the appointment of a *guardian ad litem* and any other nondispositive motion by way of order and any dispositive motion by issuing findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(A).

[2] The parties shall use Times New Roman, 12 pt. Footnotes may be no smaller than 11 pt.

**3. PROPOSED ORDERS**

The parties need not submit proposed orders for motions to dismiss or motions for summary judgment unless the court specifically orders otherwise. However, the parties must submit proposed consent decrees and/or proposed findings of fact, where such documents are relevant. Where required, proposed orders shall be submitted in compliance with Local Rule 137(b) and e-mailed in Word format to JLTorders@caed.uscourts.gov.

**4. EX PARTE APPLICATION**

Typically, the court will not hear ex parte applications but will take them under submission for decision on the papers unless otherwise notified. The filer is required to contact the courtroom deputy clerk and the opposing party *before* filing the ex parte application to advise that such request is being made. The application must indicate whether an opposition will be filed. The filer shall include an affidavit indicating a satisfactory explanation for the following: (1) the need for the issuance of such an order, (2) the inability of the filer to obtain a stipulation for the issuance of such an order from other counsel or parties in the action, and (3) why such request cannot be noticed on the court's motion calendar as provided by Local Rule 230.

**5. TROs AND INJUNCTIONS**

Parties seeking emergency or provisional relief shall comply with Federal Rule of Civil Procedure 65 and Local Rule 231. The court typically will not rule on any application for such relief for at least 24 hours after the party subject to the requested order has been served; such party may file opposing or responding papers in the interim. The parties shall lodge a courtesy copy with chambers of all papers relating to proposed TROs and injunctions, conformed to reflect that they have been filed.

**6. SEALING AND PROTECTIVE ORDERS**

No document will be sealed, nor may a redacted document be filed, without the prior approval of the court. All requests to seal or redact shall be governed by Local Rules 141 (sealing) and 140 (redaction); protective orders covering the discovery phase shall not govern the filing of sealed or redacted documents on the public docket. The court will only consider requests to seal or redact filed by the proponent of sealing or redaction. If a party plans to make a filing that includes material an opposing party has identified as confidential and potentially subject to sealing, the filing party shall

provide the opposing party with sufficient notice in advance of filing to allow for the seeking of an order of sealing or redaction from the court.

**7. FINAL PRETRIAL CONFERENCES**

The parties are required to submit a joint pretrial statement. It must be filed seven days before final pretrial conference hearing date and e-mailed as a Word document to: JLTorders@caed.uscourts.gov.

**8. TELEPHONIC APPEARANCES**

Remote appearances are encouraged. If any party wishes to appear by Zoom video conference, at least five court days in advance of the hearing, that party shall email e-mail imunoz@caed.uscourts.gov to notify the court. If approved, the court will provide access information to the parties.

**9. PARTIES DIRECTED TO CONSIDER CONSENT**

The judges of the United States District Court for the Eastern District of California have long labored under one of the heaviest caseloads in the nation even when operating with a full complement of six authorized District Judges−which it has not had in years. Thus, the parties in all civil cases are reminded of their option to consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). The magistrate judges of this court are highly skilled, experienced trial judges. Moreover, because magistrate judges cannot preside over felony criminal trials, trial dates in civil cases can be set before the assigned magistrate judge with the expectation that the trial will commence on the date scheduled.

**10. NOTICE OF THIS ORDER**

Counsel for plaintiff shall serve this order immediately on all parties, including any new parties added to the action in the future, unless this case came to the court by noticed removal, in which case defendant shall serve this order on all other parties.

**IT IS SO ORDERED.**

DATED: April 2, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE

**Gonzalez, Sheila**

**From:** caed_cmecf_helpdesk@caed.uscourts.gov
**Sent:** Thursday, April 2, 2026 12:21 PM
**To:** CourtMail@caed.uscourts.dcn
**Subject:** Activity in Case 1:26-cv-00122-JLT-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Minute Order.

**[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

## Notice of Electronic Filing

The following transaction was entered on 4/2/2026 at 12:20 PM PDT and filed on 4/2/2026

**Case Name:** Conterra Agricultural Capital, LLC v. DLP Funding, LLC
**Case Number:** 1:26-cv-00122-JLT-CDB
**Filer:**
**Document Number:** 13(No document attached)

**Docket Text:**
**MINUTE ORDER (Text Only Entry) Pursuant to Local Rule 302, the filed motion to dismiss [8] will be heard and decided by the undersigned. As set forth in the Court's standing order, no hearing will be calendared, and the matter will be decided on the papers. As a result of the ongoing judicial resource emergency in this District, approximately 100 regular civil motions remain under submission before the undersigned. As a result, it is likely to be six or more months until the motion(s) in this matter is resolved. The Court reiterates that magistrate judge consent can alleviate the delay caused by the resource emergency. The parties SHALL reconsider magistrate judge consent for all purposes or only for this pending motion. In addition, the parties are reminded of their ongoing obligation to inform the Court of any changed circumstances that have rendered all or part of any pending motion moot. Finally, the parties are informed that the undersigned generally requires a formal settlement conference take place before any civil case proceeds to trial. Should the parties jointly wish to schedule a settlement conference, they are directed to contact Courtroom Deputy Irma Munoz at**

**imunoz@caed.uscourts.gov signed by District Judge Jennifer L. Thurston on April 2, 2026. (Deputy Clerk IM)**

**1:26-cv-00122-JLT-CDB Notice has been electronically mailed to:**

Aryeh L. Kaufman aryeh@akaufmanlegal.com

Bernard Jaron Kornberg bernie.kornberg@millernash.com

Nicole Marie McLaughlin nicole.mclaughlin@millernash.com, lbfiling@millernash.com, sheila.gonzalez@millernash.com

**1:26-cv-00122-JLT-CDB Electronically filed documents must be served conventionally by the filer to:**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Conterra Agricultural Capital, LLC
Plaintiff(s)/Petitioner(s),

CASE NO. 1:26-CV-00122-JLT-CDB

vs.

DLP Funding, LLC
Defendant(s)/Respondent(s).

**IMPORTANT**
**IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

☑ **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: 04/02/2026 Signature: /s/ Nicole M. McLaughlin

Print Name: Nicole M. McLaughlin

(◉) Plaintiff/Petitioner ( ) Defendant/Respondent
Counsel for Conterra Agricultural Capita*

☐ **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: ____________ Signature: ____________________

Print Name: ____________________

(◉) Plaintiff/Petitioner ( ) Defendant/Respondent
Counsel for ____________________*

***If representing more than one party, counsel must indicate the name of each party responding.***

**MILLER NASH LLP**
Bernard J. Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
Nicole M. McLaughlin, Bar No. 272019
nicole.mclaughlin@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: (562) 435-8002
Facsimile: (562) 435-7967

Attorneys for Plaintiff CONTERRA AGRICULTURAL CAPITAL, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONTERRA AGRICULTURAL CAPITAL, LLC, an Iowa limited liability company,

Plaintiff,

v.

DLP FUNDING, LLC, a New York limited liability company,

Defendant.

Case No. 1:26-CV-00122-JLT-CDB

**JOINT STIPULATION RE EXTENDING TIME FOR PLAINTIFF TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR DEFENDANT TO FILE REPLY**

Plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") and defendant DLP Funding, LLC ("Defendant") (collectively, the "Parties") respectfully stipulate as follows:

1. On January 8, 2026, Plaintiff filed its Complaint against Defendant in the United States District Court, Eastern District of California [ECF No. 1].

2. On March 31, 2026, Defendant filed its Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. Rules 12(b)(1), 12(b)(2), 12(b)(3), and Forum Non Coveniens ("Motion to Dismiss") [ECF No. 8].

3. On April 2, 2026, the Court vacated the hearing on the Motion to Dismiss due to the reassignment of the case to the Hon. Jennifer L. Thurston [ECF No. 11].

4. Pursuant to Local Rule 230, Plaintiff's deadline to file its opposition pleading to Defendant's Motion to Dismiss is on April 14, 2026.

5. Parties have met and conferred and agree to extend the time for Plaintiff to file its opposition pleading to April 28, 2026.

6. Parties further agree that Defendant's deadline to file its reply in support of its Motion to Dismiss shall be filed no later than May 15, 2026, which constitutes a one-week extension of the current deadline under Local Rule 230(d).

7. Good cause exists for this extension to allow Parties additional time to prepare their respective briefs. The request is stipulated and will not prejudice any party.

**NOW, THEREFORE**, Plaintiff and Defendant stipulate that (1) Plaintiff's deadline to file its opposition to Defendant's Motion to Dismiss shall be extended to April 28, 2026 and (2) Defendant's deadline to file its reply in support of its Motion to Dismiss shall be extended to May 15, 2026.

Dated: April 13, 2026.

MILLER NASH LLP

By: */s/ Nicole M. McLaughlin*
Bernie J. Kornberg
Nicole M. McLaughlin
Attorneys for Plaintiff
CONTERRA AGRICULTURAL CAPITAL, LLC

LAW OFFICE OF ARYEH KAUFMAN

By: /s/ *Aryeh L. Kaufman*
Aryeh L. Kaufman
Attorneys for Defendant
DLP Funding, LLC

**MILLER NASH LLP**
Bernard J. Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
Nicole M. McLaughlin, Bar No. 272019
nicole.mclaughlin@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: (562) 435-8002
Facsimile: (562) 435-7967

Attorneys for Plaintiff CONTERRA AGRICULTURAL CAPITAL, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONTERRA AGRICULTURAL CAPITAL, LLC, an Iowa limited liability company,

Plaintiff,

v.

DLP FUNDING, LLC, a New York limited liability company,

Defendant.

Case No. 1:26-CV-00122-JLT-CDB

**[PROPOSED] ORDER RE STIPULATION EXTENDING TIME FOR PLAINTIFF TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR DEFENDANT TO FILE REPLY**

On April 13, 2026, plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") and defendant DLP Funding, LLC ("Defendant") filed a joint stipulation ("Joint Stipulation") requesting an extension of time for Plaintiff to file its opposition to Defendant's Motion to Dismiss and for an extension of time for Defendant to file its reply in support of its Motion to Dismiss. The Court finds good cause to approve the Joint Stipulation.

Accordingly, good cause appearing, IT IS HEREBY ORDERED that:

1. The Joint Stipulation [ECF No. 15] is APPROVED.

**IT IS SO ORDERED.**

Dated:

______________________________
United States District Judge

**Gonzalez, Sheila**

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **Sent:** | Tuesday, April 14, 2026 9:16 AM |
| **To:** | CourtMail@caed.uscourts.dcn |
| **Subject:** | Activity in Case 1:26-cv-00122-JLT-CDB Conterra Agricultural Capital, LLC v. DLP Funding, LLC Minute Order. |

**[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of California - Live System**

## Notice of Electronic Filing

The following transaction was entered on 4/14/2026 at 9:15 AM PDT and filed on 4/14/2026

| | |
|---|---|
| **Case Name:** | Conterra Agricultural Capital, LLC v. DLP Funding, LLC |
| **Case Number:** | 1:26-cv-00122-JLT-CDB |
| **Filer:** | |
| **Document Number:** | 16(No document attached) |

**Docket Text:**
**MINUTE ORDER signed by Magistrate Judge Christopher D. Baker on 04/14/2026: For good cause shown, the parties' stipulated request to amend the briefing schedule on Defendant's motion to dismiss (Doc. [15]) is GRANTED. Accordingly, Plaintiff shall file its opposition to Defendant's motion no later than 4/28/2026; Defendant shall file any optional reply in further support of its motion no later than 5/16/2026. (Deputy Clerk CRB)**

**1:26-cv-00122-JLT-CDB Notice has been electronically mailed to:**

Aryeh L. Kaufman aryeh@akaufmanlegal.com

Bernard Jaron Kornberg bernie.kornberg@millernash.com

Nicole Marie McLaughlin nicole.mclaughlin@millernash.com, lbfiling@millernash.com, sheila.gonzalez@millernash.com

**1:26-cv-00122-JLT-CDB Electronically filed documents must be served conventionally by the filer to:**

**MILLER NASH LLP**
Bernard J. Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: (562) 435-8002
Facsimile: (562) 435-7967

Attorneys for Plaintiff CONTERRA AGRICULTURAL CAPITAL, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTERRA AGRICULTURAL CAPITAL, LLC, an Iowa limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DLP FUNDING, LLC, a New York limited liability company,<br><br>Defendant. | Case No. 1:26-CV-00122-JLT-CDB<br><br>**JOINT STIPULATION RE REFERRING ACTION TO UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF CALIFORNIA** |

Plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") and defendant DLP Funding, LLC ("Defendant") (collectively the "Parties"), through their respective counsel of record, hereby stipulate as follows:

**RECITALS**

A. On January 8, 2026, Plaintiff filed this action in the Eastern District of California. The operative complaint generally asserts that Plaintiff provides a loan to Hronis, Inc. and certain affiliates (collectively, the "Borrowers") secured, in part, by first position liens the accounts of Borrowers. The complaint further alleges the Defendant, with knowledge of Plaintiff's lien, purchased the accounts of Borrowers and has taken actions to prevent Conterra from recovery on its collateral (the "Disputed Accounts"). On that basis, Conterra alleges causes of action for (1)

Conversion and (2) Interference with Contract.

B. On March 31, 2026, Defendant filed in this action a Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. Rules 12(B)(1), 12(B)(2), 12(B)(3), And Forum Non Coveniens (the "Motion to Dismiss"). [Dkt. #8]. This motion generally asserts that this Court lacks jurisdiction to hear this action. Opposition to this motion is due on March 28, 2026.

C. On March 6, 2026, Borrowers filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, commencing a bankruptcy case in the United States Bankruptcy Court, Eastern District of California. The matters are administratively consolidated in the lead case of *In re Hronis, Inc,* Case No. 1:26-bk-10978 (the "Bankruptcy Case").

D. On April 21, 2026, Defendant filed an adversary complaint in the Bankruptcy Case to Determine Interest in Property of Pre-Petition Accounts and Related Relief ("Adversary Proceeding"). This complaint, which names certain of the Borrowers as defendants, seeks a determination as to whether the Disputed Accounts constitute property of the estate.

E. In response to the Motion to Dismiss, Plaintiff intends to assert in part that this Court has jurisdiction over this action under 28 U.S.C. § 1334(b), which provides that district courts have jurisdiction over "proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.§ 1334(b). Plaintiff will assert that, at a minimum, related to jurisdiction exists because the outcome of this action could conceivably affect the Debtors' bankruptcy estate because it will determine whether the Disputed Accounts belong to Plaintiff, which will reduce the amount of Conterra's claim in the bankruptcy case.

F. Plaintiff thus asserts this action is therefore "related" to the Bankruptcy Case within the definition of 28 U.S.C. § 1334(b). *See In re Fietz* 852 F.2d 455, 457 (9th Cir. 1988) (a proceeding is "related to" a case under Title 11 if the outcome could conceivably have any effect on the bankruptcy estate). *See also In re Sasson,* 424 F.3d 864, 868 (9th Cir. 2005) (A bankruptcy court's "related to" jurisdiction is very broad, "including nearly every matter directly or indirectly related to the bankruptcy"). As stated by the Ninth Circuit, "Bankruptcy jurisdiction exists where, as here, the litigation may alter potential obligations arising out of

claims pending against the estate." *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306 (9th Cir. 1989)

G. Federal Law allows this Court to refer cases which are "arising under title 11 or arising in or related to cases under title 11" to be heard by Bankruptcy Courts of this division. 28 U.S.C. § 157(a).

H. This Court has implemented section 157 through General Order No. 161, which provides that "all cases under Title II, United States Code, and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district."

I. Defendant does not contest that the Bankruptcy Court has jurisdiction over this matter.

J. Because § 1334(b) bankruptcy-related jurisdiction exists, Plaintiff and Defendant jointly request this Court refer this case to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and General Order No. 161.

**STIPULATION**

The Parties hereby jointly agree and stipulate that:

1. This action be referred to the United States Bankruptcy Court, Eastern District of California pursuant to 28 U.S.C. § 157(a) and General Order No. 161; and

2. The Motion to Dismiss is denied as moot due to the referral of this action to the Bankruptcy Court.

*** SIGNATURES ON NEXT PAGE ***

Dated: April 27, 2026

MILLER NASH LLP

By: */s/ Bernie J. Kornberg*
Bernie J. Kornberg
Attorneys for Plaintiff Conterra Agricultural Capital, LLC

Dated: April 27, 2026

LAW OFFICE OF ARYEH KAUFMAN

By: */s/ Aryeh Kaufman*
Aryeh Kaufman
Attorneys for Defendant DLP Funding, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing document listed below on the date set forth below by the method(s) indicated:

**JOINT STIPULATION RE REFERRING ACTION TO UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF CALIFORNIA**

by the following indicated method or methods on the date set forth below:

☒ CM/ECF system transmission.

☐ Email.

☐ First-class mail, postage prepaid.

☐ Hand delivery.

Dated: April 27, 2026

*/s/ Bernie Kornberg*
Bernie Kornberg

**MILLER NASH LLP**
Bernard J. Kornberg, Bar No. 252006
bernie.kornberg@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: (562) 435-8002
Facsimile: (562) 435-7967

Attorneys for Plaintiff CONTERRA AGRICULTURAL CAPITAL, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTERRA AGRICULTURAL CAPITAL, LLC, an Iowa limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DLP FUNDING, LLC, a New York limited liability company,<br><br>Defendant. | Case No. 1:26-CV-00122-JLT-CDB<br><br>**ORDER ON JOINT STIPULATION RE REFERRING ACTION TO UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF CALIFORNIA** |

The Court, having reviewed the stipulation between plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") and defendant DLP Funding, LLC ("Defendant") (collectively the "Parties") for this action be referred to the United States Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court"), finds and concludes that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and on that basis, concludes that referral of this matter to the Bankruptcy Court is appropriate under 28 U.S.C. § 157(a) and General Order No. 161.

IT IS THEREFORE ORDERED THAT:

1. This action is referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and General Order No. 161;

2. Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. Rules 12(B)(1), 12(B)(2), 12(B)(3), And Forum Non Coveniens (the "Motion to Dismiss") [Dkt. #8] is denied as moot due to the referral of this action to the Bankruptcy Court; and

3. Upon referral, the matter shall be opened by the Bankruptcy Court as an adversary proceeding in the matter of *In re Hronis, Inc,* Case No. 1:26-bk-10978 (the "Bankruptcy Case").

Dated: By: ______________________________
Hon. Christopher D. Baker
Magistrate Judge

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONTERRA AGRICULTURAL CAPITAL, LLC,

Plaintiff,

v.

DLP FUNDING, LLC,

Defendant.

Case No. 1:26-cv-00122-CDB

ORDER ON STIPULATION REFERRING ACTION TO UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TERMINATING AS MOOT DEFENDANT'S MOTION TO DISMISS

(Doc. 17)

ORDER STAYING ACTION PENDING RESOLUTION OF BANKRUPTCY PROCEEDINGS

**<u>120-DAY DEADLINE</u>**

ORDER VACATING MAY 7, 2026, SCHEDULING CONFERENCE

(Docs. 3, 6)

Plaintiff Conterra Agricultural Capital, LLC ("Plaintiff") initiated this action with the filing of a complaint against Defendant DLP Funding, LLC ("Defendant") on January 8, 2026. (Doc. 1). On March 31, 2026, Defendant filed a motion to dismiss the complaint. (Doc. 8). That motion is not yet fully briefed by the parties and remains pending. *See* (Doc. 16).

Pending before the Court is the parties' stipulated request to "refer" the action to the United States Bankruptcy Court for the Eastern District of California ("Bankruptcy Court") and

to terminate as moot Defendant's motion to dismiss, filed on April 27, 2026. (Doc. 17). In their stipulation, the parties represent that the complaint generally asserts that Plaintiff provides a loan to Hronis, Inc. and certain affiliates (collectively, the "Borrowers") secured, in part, by first position liens against the Borrowers' accounts, and that Defendant, with knowledge of Plaintiff's lien, purchased the Borrowers' accounts and has taken actions to prevent Plaintiff from recovery on its collateral (the "Disputed Accounts"). *Id.* ¶ A. The parties represent that on March 6, 2026, the Borrowers filed voluntary Chapter 11 bankruptcy petitions that were consolidated by the Bankruptcy Court in the lead case of *In re Hronis, Inc.*, Case No. 1:26-bk-10978 (the "Bankruptcy Case"). *Id.* ¶ C. According to the parties, on April 21, 2026, Defendant filed an adversary complaint in the Bankruptcy Case to determine interest in property of pre-petition accounts and related relief (the "Adversary Proceeding"), which names certain of the Borrowers as defendants and seeks a determination as to whether the Disputed Accounts constitute property of the estate. *Id.* ¶ D.

Plaintiff asserts that this action is "related" to the Bankruptcy Case within the definition of 28 U.S.C. § 1334(b) because "the outcome of this action could conceivably affect the Debtors' bankruptcy estate [as] it will determine whether the Disputed Accounts belong to Plaintiff, which will reduce the amount of [Plaintiff's] claim in the bankruptcy case." *Id.* ¶ E, F (citing *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *In re Sasson*, 424 F.3d 864, 868 (9th Cir. 2005); *Kaonohi Ohana Ltd. v. Sutherland*, 873 F.2d 1302, 1306 (9th Cir. 1989)). The parties note that federal law allows the Court to refer cases which are "arising under title 11 or arising in or related to cases under title 11" to be heard by the Bankruptcy Court of this division, and that this Court has implemented section 157 through General Order No. 161, which provides that "all cases under Title II, United States Code, and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district." *Id.* ¶¶ G (citing 28 U.S.C. § 157(a)), H. Defendant does not contest that the Bankruptcy Court has jurisdiction over this matter. *Id.* ¶ I. The parties therefore request the Court refer this case to the Bankruptcy Court pursuant to § 157(a) and General Order No. 161 because § 1334(b) bankruptcy-related jurisdiction exists. *Id.* ¶ J.

Under § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). This Court's General Order No. 161 similarly provides that "[p]ursuant to 28 U.S.C. § 157(a), all cases under Title II, United States Code, and all proceedings arising under Title II or arising in or related to a case under Title II are referred to the bankruptcy judges of this district." *See* General Order No. 161.

First, this case is at least "related to" the Borrower's bankruptcy proceedings as demonstrated by the parties' stipulated representations that "the outcome of this action could conceivably affect the Debtors' bankruptcy estate [as] it will determine whether the Disputed Accounts belong to Plaintiff, which will reduce the amount of [Plaintiff's] claim in the bankruptcy case." *See* (Doc. 17 ¶ E, F); *Knapp v. Cardinale*, No. C–12–05076–RMW, 2014 WL 4949522, at *1 (N.D. Cal. Oct. 2, 2014) (citing *McGuire v. United States*, 550 F.3d 903, 911-12 (9th Cir. 2008) ("A civil proceeding is 'related to' a title 11 case if 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"); *In re Fietz*, 852 F.2d at 457); *Baek v. Halvorson*, No. SACV 18-7046 JVS (RAOx), 2019 WL 13039652, at *4 (C.D. Cal. Mar. 26, 2019) ("'Related to' jurisdiction includes 'nearly every matter directly or indirectly related to the bankruptcy.'") (citing *In re Sasson*, 424 F.3d at 868). Therefore, this case may be referred under § 157(a).

Second, because the parties stipulate to referral of this action to Bankruptcy Court and seek the Court terminate as moot Defendant's pending motion to dismiss based on the requested referral (Doc. 17 at 3), the Court finds that referral of this case to the Bankruptcy Court is supported by "the efficient use of judicial resources." *See In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (citation omitted); *Knapp*, 2014 WL 4949522 at *1-2.

Because the Bankruptcy Court has at least "related to" jurisdiction over this action, referral would promote efficiency, and based on the parties' stipulated representations, the Court will grant the parties' stipulated request, refer this action to the Bankruptcy Court, and terminate as moot Defendant's motion to dismiss due to the referral of the action to Bankruptcy Court. *See Baek*, 2019 WL 13039652 at *5 (granting motion to refer matter to bankruptcy court); *Knapp*,

2014 WL 4949522 at *3 (same).

The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *accord CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Courts have the power to consider stays *sua sponte*." *Ali v. Trump*, 241 F. Supp. 3d 1147, 1152 (W.D. Wash. 2017); *see Ward v. Batra*, No. 1:21-cv-00929-SKO (PC), 2025 WL 3120243, at *1 (E.D. Cal. Nov. 5, 2025) (same). In granting a stay, a court must weigh "the length of the stay against the strength of the justification given for it." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). "If a stay is especially long or its term is indefinite, [courts] require a greater showing to justify it." *Id*.

Three factors guide the Court's determination of whether a stay is appropriate: "(1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55).

In light of the referral, and considering the relevant *CMAX* factors above, the Court finds it appropriate to stay this action pending resolution of the bankruptcy proceedings. Accordingly, the Court will direct the parties to file periodic joint status reports advising the Court of the status and completion of the bankruptcy proceedings and how the parties intend to proceed with the instant action. *See Krivolavek v. BeavEx Inc.*, No. 1:18-cv-01416-NONE-SKO, 2021 WL 5855259, at *5 (E.D. Cal. Nov. 16, 2021).

**<u>Conclusion and Order</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. The parties' stipulated request to refer this action to the United States Bankruptcy Court for the Eastern District of California pursuant to 28 U.S.C. § 157(a) and General Order No. 161 (Doc. 17) is GRANTED;
2. In light of the referral, the Clerk of the Court is DIRECTED to terminate as moot Defendant's motion to dismiss (Doc. 8);

3. This action is STAYED pending resolution of the bankruptcy proceedings or until further order of this Court;
4. **Within 120 days** of the entry of this order, and every 120 days thereafter, the parties SHALL FILE a joint status report advising the Court of the status of the bankruptcy proceedings;
5. **Within 14 days** of the resolution of the bankruptcy proceedings, the parties SHALL FILE a joint status report advising the Court how the parties intend to proceed with the instant action; and
6. The scheduling conference set for May 7, 2026 (Docs. 3, 6) and related filing deadlines are VACATED, to be reset as necessary following any order of the Court lifting the stay.

IT IS SO ORDERED.

Dated: **April 30, 2026**

UNITED STATES MAGISTRATE JUDGE